Mark O. Morris (UT 4636)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, UT  84101
Telephone:  (801) 257-1900
Facsimile:   (801) 257-1900
Email: mmorris@swlaw.com

Joel D. Heusinger, No. 40866 (*pro hac admission anticipated*)
Kory D. George, No. 41058 (*pro hac admission anticipated*)
Woods | Aitken LLP
8055 East Tufts Ave., Suite 525
Denver, Colorado 80237
Phone: 303-606-6700
Fax: 303-606-6701
Email: jheusinger@woodsaitken.com
          kgeorge@woodsaitken.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LUDVIK ELECTRIC CO., a Colorado corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>VANDERLANDE INDUSTRIES INC., a Delaware corporation,<br><br>　　　　　Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:21-cv-00462-DAO<br><br>Magistrate Judge Daphne A. Oberg |

COMES NOW, the Plaintiff, Ludvik Electric Co. and for its Complaint against Vanderlande Industries Inc. states and alleges the following:

## STATEMENT OF PARTIES

1. Plaintiff, Ludvik Electric Co. ("LE" or "Ludvik"), is a Colorado corporation, with a principal place of business in Lakewood, Colorado. Ludvik is in the business of construction and is registered to do business in Utah as a foreign corporation.

2. Vanderlande Industries Inc. ("VI") is a Delaware corporation, with a principal place of business in Marietta, Georgia and is registered to do business in Utah as a foreign corporation. VI is in the business of designing, manufacturing, and supplying baggage handling systems.

3. VI's registered agent in Utah is Corporation Service Company, 15 West South Temple, Suite 600, Salt Lake City, UT 84101.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over all of Ludvik's claims, in that there is complete diversity of citizenship between Ludvik and VI, and the amount in controversy alleged by Ludvik exceeds $75,000, exclusive of interest and costs.

5. LE's headquarters is located in Lakewood, Colorado. LE's high level officers direct, control, and coordinate LE's activities at its headquarters. For purposes of diversity jurisdiction, LE is a citizen of the State of Colorado.

6. VI's headquarters is located in Atlanta, Georgia. For purposes of diversity jurisdiction, VI is a citizen of a state other than the State of Colorado.

7. Venue in the U.S. District Court for the District of Utah is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to LE's claims occurred in this District, and VI transacts business and is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

*The Project and Pertinent Contracts*

8.  In October of 2013, Salt Lake City Corporation (the "Owner") awarded Holder-Big-D Construction, A Joint Venture ("HDJV"), an Agreement for Construction Services Management ("Prime Contract") for the performance of specified construction work on the SLC Terminal Redevelopment Project at the Salt Lake City International Airport in Salt Lake City, Utah ("Project").

9.  On or about December 3, 2013, LE and VI entered into an Installation Service Agreement ("ISA"), the terms of which are incorporated herein by reference. A true and correct copy of the ISA is attached as **Exhibit A**.

10. On August 29, 2016, HDJV entered into a subcontract with VI for VI to conduct certain portions of work of the Prime Contract, including installing a baggage handling system on the Project ("VI Subcontract").

11. On or about June 20, 2017, LE and VI entered into a Project Subcontract Agreement ("PSA"), the terms of which are incorporated herein by reference. A true and correct copy of the PSA is attached as **Exhibit B.** The ISA and PSA, together with all amendments, modifications, and change orders thereunder will be jointly referred to as the "Subcontract."

12. The PSA describes the scope of work of the Subcontract, but generally, LE was to provide mechanical and electrical work related to the baggage handling system called out by the VI Subcontract.

13. LE completed its work pursuant to the Subcontract.

4851-3394-2201

*The Project Claims*

14.     During its execution of the work on the Project, LE incurred damages resulting from changes in sequencing of work and schedules, delayed access to drawings, late material deliveries, and lack of access to various areas on Project  Some of these delays were caused exclusively by VI, while others were caused by the Owner and/or HDJV.

15.     LE timely presented VI with notices and supporting information related to the above damages (the "LE Claims").  In response, VI asserted various claims against LE relating to LE's work during the performance of the Project (the "VI Claims").

16.     Some of the LE Claims were caused by and attributable to HDJV and/or the Owner ("LE Pass-Through Claims").  Other of the LE Claims were caused by and are attributable solely to VI and were not attributable to HDJV and/or the Owner ("LE Non-Pass-Through Claims").

*The Ludvik/VI Mediation and Settlement Agreement*

17.     In June 2020, LE and VI attended mediation in Atlanta, Georgia (the "Mediation") to resolve the claims that had accrued by that time.  During and after the Mediation, LE was continuing to do work under the Subcontract.  Both parties understood at the Mediation, and at all times, that LE intended to assert the LE Pass-Through Claims unless VI settled them at the Mediation as well.

18.     During the course of the Mediation, it became apparent that VI was not willing to pay monies to settle the LE Pass-Through Claims.  It did indicate through the mediator Allen Gibson that it was willing to pay monies to settle the LE Non-Pass-Through Claims on terms that presumed the continued enforceability of the LE Pass-Through Claims.  At no time during the Mediation did VI, through the mediator or otherwise, suggest that it had done anything to prejudice

4

or diminish the value of the LE Pass-Through Claims.  In reliance upon the express intention of VI to assist in and participate in the recovery from LE's prosecution of the LE Pass-Through Claims, and upon VI's disclosing no information suggesting or showing that the LE Pass-Through Claims were no longer enforceable against HDJV, LE agreed to accept a much lower amount in settlement, resolving only the LE Non-Pass-Through Claims.

19. At the conclusion of the Mediation, on June 12, 2020, LE and VI entered into a Memorandum of Understanding Agreement (the "MOU").  The MOU expressly excepted from settlement "Ludvik's pass through claims to HD. . . ."  VI also expressly promised LE in the MOU that it would "provide reasonable support and cooperation through the claims process."  VI further implicitly warranted to LE the enforceability and value of the LE Pass-Through Claims by reserving to itself, as part of the settlement, the first million dollars that LE recovered from the LE Pass-Through Claims beyond the reasonable hourly fees and costs to pursue those claims.

20. The parties also agreed that while the MOU was enforceable, the final terms of the settlement would be reduced to a "Full, Final, and Complete Release."

21. In the weeks that followed the MOU, the parties negotiated the terms of the final settlement and release document.

22. On June 18, 2020, LE delivered to VI the first draft of the final settlement document, titled "Settlement, Release, and Pass-Through Agreement."  The final terms of that Agreement were finally agreed to and executed on or about August 24, 2020 ("Settlement Agreement").  A true and correct copy of the Settlement Agreement is attached as **Exhibit C.** Among the terms in the Settlement Agreement to which VI agreed, by which VI continued to

induce and lead LE to believe that VI had done nothing to prejudice or devalue the LE Pass-Through Claims, are the following:

- a. "VI and LE agreed that a portion of the LE Claims may be the ultimate responsibility of HDJV and should be passed through to HDJV . . . ." Ex. C at 1;

- b. "VI agrees to take reasonable steps necessary to support the LE Pass-Through Claims against HDJV." Ex. C at 2;

- c. "LE shall have sole authority to accept or reject any settlement offers from or on behalf of HDJV or any other source regarding the LE Pass-Through Claims and will be responsible to preparing the LE Pass-Through Claims and for presentation of the same to HDJV in the name of VI in any mediation, negotiation, arbitration, or litigation." Ex. C at 2;

- d. "[N]o release contained herein results in a release of HDJV of any LE Pass-Through Claims." Ex. C at 3;

- e. "This Agreement and this release is not intended and should not be interpreted to act as a release of HDJV of any LE Pass-Through Claims." Ex. C at 3;

- f. "Upon such payment by VI to LE of any award, judgment and/or settlement paid by or on behalf of HDJV to VI for the LE Pass-Through Claims, if any, VI shall be finally and fully released and discharged by LE with regard to the LE Pass-Through Claims." Ex. C at 3;

- g. "VI party [*sic*] agrees to reasonably cooperate with LE regarding the pursuit of the LE Pass-Through Claims." Ex. C at 5; and

  h.  Of monies collected on the Pass-Through Claims after collection of fees and costs, the "next million dollars ($1,000,000) of proceeds" were to go to VI. Ex. C at 6.

23. The consideration VI promised to LE in exchange for LE's promises and covenants in the Settlement Agreement included $3.9 million, $327,677 of subcontract funds that VI was holding as retainage, and importantly, VI's cooperation to pursue the LE Pass-Through Claims.

24. VI's express covenants and omissions of any information to the contrary, that the LE Pass-Through Claims were intact and enforceable and that VI had done nothing to prejudice those claims, created a reasonable belief in and induced LE to agree to the Settlement Agreement. As a result of the Settlement Agreement, the parties resolved among themselves the LE Non-Pass-Through Claims and the VI Claims ("Settled Claims"). The Settlement Agreement left undisturbed and unreleased all of the LE Pass-Through Claims.

25. LE and VI expressly contemplated and agreed in connection with the Settlement Agreement that LE would prosecute the LE Pass-Through Claims against HDJV and the Owner, and that VI would do nothing to prejudice the LE Pass-Through Claims.

26. On November 5, 2020, six weeks after the Settlement Agreement was signed, VI directed correspondence to HDJV in response to inquiries that HDJV had made concerning claims belonging to LE. In that letter, VI expressly represented to HDJV that VI and LE had achieved a settlement between themselves, "except the acceleration and labor productivity loss claim against HDJV. . . ." VI went on to state to HDJV that "[t]he settlement preserved any claims that Ludvik could prove against HDJV. . . . To that end, the settlement agreement preserved Ludvik's right to present a claim through Vanderlande to HDJV."

7

*HDJV Mediation*

27.     Reasonably believing that VI had done nothing to prejudice the LE Pass-Through Claims, on December 7 and 8, 2020, LE attended a mediation with VI, HDJV, and the Owner to mediate, among other claims, the LE Pass-Through Claims directly between LE and HDJV that the Settlement Agreement expressly left undisturbed (the "HDJV Mediation").

28.     During the course of the HDJV Mediation, while proposing that LE, the Owner, and HDJV might be able to simultaneously resolve the LE Pass-Through Claims along with other claims belonging to LE, LE learned for the very first time that both prior and subsequent to the Mediation, VI had executed documents in favor of HDJV that affirmatively waived and released the LE Pass-Through Claims.  This shocking development deprived LE of significant leverage in the HDJV Mediation.

29.     Specifically, prior to final execution of the Settlement Agreement, VI had waived and released the LE Pass-Through Claims for LE's work prior to August 6, 2020.  VI knowingly and purposely prejudiced LE's rights via various change orders VI executed with HDJV that enabled VI to resolve claims with HDJV by eliminating any exposure HDJV had to the LE Pass-Through Claims. Or at minimum, VI knew, and failed to disclose, that it had waived and released all of LE's Pass-Through Claims for work performed prior to August 6, 2020 when it executed the Settlement Agreement.

30.     In addition, between August 6, 2020 and the December HDJV Mediation, VI further waived and released all of the LE Pass-Through Claims via additional and various change orders executed with HDJV. Again, through its actions, VI knowingly and purposely prejudiced LE's rights by eliminating any exposure HDJV had to the LE Pass-Through Claims, or at

minimum, VI knew, and failed to disclose, that it had waived and released all of LE's Pass-Through Claims.

31. By the time of the HDJV Mediation, VI had waived and released the entirety of the LE Pass-Through Claims on numerous occasions, so there were no longer any such claims that LE could pursue pass through VI against HDJV, depriving LE of its LE Pass-Through Claims as a matter of law and causing it substantial damages.

32. At the HDJV Mediation, HDJV and the Owner advised VI and LE that any pursuit of the LE Pass-Through Claims against them could come with the risk of submitting a false and/or fraudulent claim by reason of VI's repeated waiver of all such claims. As a result, LE was forced to acknowledge that VI had eviscerated and completely released the LE Pass-Through Claims as against HDJV and the Owner in connection with the settlement reached in the HDJV Mediation.

*VI's Fraud, Negligent Misrepresentations, and/or Concealment or Fraudulent Non-Disclosure*

33. When LE executed the Settlement Agreement, it had no knowledge that VI had waived and released the LE Pass-Through Claims.

34. When VI executed the Settlement Agreement, VI knew that it had signed one or more waivers and releases of the LE Pass-Through Claims via the various change orders and releases it executed with HDJV.

35. At no point prior to or at the time of signing the Settlement Agreement did VI disclose to LE that it had waived and released the LE Pass-Through Claims. By reason of those omissions and VI's affirmative statements and conduct leading up to and incorporated in the Settlement Agreement, VI tortiously led LE to believe that the LE Pass-Through Claims were still

9

enforceable against HDJV. VI defrauded LE. LE was unaware of and did not have copies of the executed change orders and pay applications between VI and HDJV.

36. Even after the Settlement Agreement, VI continued to behave and conduct itself as if the LE Pass-Through Claims were still enforceable against HDJV.

37. At the time of the Mediation and the signing of the Settlement Agreement, VI knew that it had already signed one or more waivers and releases the LE Pass-Through Claims more than once.

38. That VI executed multiple change orders with HDJV prior to the Settlement Agreement, all of which repeatedly waived the LE Pass-Through Claims, was a material fact that LE did not know, and that VI consistently failed to disclose to LE.

39. At the time of executing both the MOU and Settlement Agreement, VI intended for LE to rely on its representations and omissions of fact to the effect that VI had not waived or otherwise done anything to prejudice the LE Pass-Through Claims and that VI would cooperate and take reasonable steps to support the prosecution of the LE Pass-Through Claims. VI knew that LE was counting on the enforceability of the LE Pass-Through Claims. Such inducements and representations were false at the time they were made, and VI made those representations for the purpose of inducing LE to enter into the MOU and Settlement Agreement, respectively.

40. LE reasonably relied on VI's representations and omissions in executing the MOU and Settlement Agreement.

41. Remarkably, LE has come to learn that even after the HDJV Mediation and execution of the Settlement Agreement, VI has, without notice to or the consent of LE, executed

additional change orders with HDJV to further waive and/or reaffirm its prior waivers of the LE Pass-Through Claims, all to the continuing prejudice of LE.

42. Prior to VI intentionally waiving the LE Pass-Through Claims, which enabled VI to obtain beneficial and lucrative change order agreements from HDJV, the LE Pass-Through Claims amounted to $9,410,769.

### FIRST CLAIM FOR RELIEF
### Fraud

43. LE incorporates the allegations of all preceding paragraphs as if it has restated them in this paragraph. In addition, LE states and alleges as follows:

44. Between June 12 and August 24, 2020, in the course of negotiating and executing the Settlement Agreement, VI made representations and statements to LE about the continued enforceability of the LE Pass-Through Claims, which material facts VI knew to be false, about the status of the LE Pass-Through Claims, and VI's actions related to the LE Pass-Through Claims.

45. VI made such statements knowing they were false, and/or without regard for the truth, and/or knowing that it could not honor its promises.

46. VI intended that LE would rely on the false statements and omissions of material facts to induce LE to accept a settlement in amounts that were millions of dollars less than LE's damages under all of its claims arising from the Subcontract.

47. LE reasonably relied on VI's false statements and omissions of fact when it agreed to the Settlement Agreement.

48. LE has suffered and continues to suffer damages as a result of relying on VI's false statements.

49. All conditions precedent to asserting this claim have occurred, have been satisfied, or have otherwise been waived.

50. By reason of VI's fraud, LE is entitled to judgment against VI in an amount of not less than $9,410,769.00 in actual damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Negligent Misrepresentation

51. LE incorporates the allegations of all preceding paragraphs as if it has restated them in this paragraph. In addition, LE states and alleges as follows:

52. Between June 12 and August 24, 2020, in the course of negotiating and executing the MOU and Settlement Agreement, VI made inducements, representations, and statements about material facts, which statements were false, about the status of the LE Pass-Through Claims and VI's intentions related to the LE Pass-Through Claims.

53. VI made such statements knowing they were false and/or failed to use reasonable care to determine whether its representations were true.

54. VI was in a better position than LE to know the true facts regarding its statements.

55. VI had a financial interest in the Settlement Agreement and was aware that LE was willing to accept a lower amount of money from VI if the LE Pass-Through Claims were presumed undisturbed and enforceable against HDJV.

56. LE reasonably relied on VI's false statements when it entered into the Settlement Agreement.

57. LE suffered damages as a result of relying on VI's false statements.

58. All conditions precedent to asserting this claim have occurred, have been satisfied, or have otherwise been waived.

59. By reason of VI's negligent misrepresentations, LE is entitled to judgment against VI in an amount of not less than $9,410,769.00 in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Concealment or Fraudulent Non-Disclosure**

60. LE incorporates the allegations of all preceding paragraphs as if it has restated them in this paragraph. In addition, LE states and alleges as follows:

61. As part of its subcontract relationship and involvement in the Mediation, VI had a duty to negotiate in good faith and to not omit material facts from its statements and representations to LE during the course of the Mediation.

62. Additionally, the parties' agreements contemplated a common interest between LE and VI that gave rise to a duty in VI to fully disclose all material facts, in particular those related to claims they both expressly contemplated being brought against HDJV and the Owner.

63. That VI executed multiple change orders with HDJV that repeatedly waived the LE Pass-Through Claims was a material fact that LE did not know, that VI had a duty to disclose, and that VI omitted.

64. VI's failure to disclose the material fact that it had waived and released the LE Pass-Through Claims to LE's prejudice was a substantial, if not the sole factor in causing LE's damages by wiping out the LE Pass-Through Claims.

65. All conditions precedent to asserting this claim have occurred, have been satisfied, or have otherwise been waived.

66. By reason of VI's fraudulent concealment and non-disclosures, LE is entitled to judgment against VI in an amount of not less than $9,410,769.00 in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
**Breach of Contract**

67. LE incorporates the allegations of all preceding paragraphs as if it has restated them in this paragraph. In addition, LE states and alleges as follows:

68. LE and VI entered into Settlement Agreement, which is a valid and enforceable contract.

69. VI has breached the Settlement Agreement by failing to reasonably cooperate with LE, by failing to take reasonable steps to support the LE Pass-Through Claims, and by failing to pay other monies that were to become due upon Final Completion and after VI received other payments from the Owner. These monies include but are not limited to $327,677.00 in retainage that VI promised to pay to LE in addition to the $3.9 million to resolve LE's claims. Those monies were to be paid for, among other things, LE's continuing work on the Project under the Subcontract subsequent to the Settlement Agreement.

70. As a direct and proximate cause of VI's failure to pay LE monies owed after Final Completion, LE has suffered damages in an amount of not less than $327,677.00.

71. All conditions precedent to asserting this claim have occurred, have been satisfied, or have otherwise been waived.

72. By reason of VI's breaches of contract, LE is entitled to judgment against VI in an amount of not less than $9,738,446.00.

### FIFTH CLAIM FOR RELIEF
**Breach of Good Faith and Fair Dealing**

73. LE incorporates the allegations of all preceding paragraphs as if it has restated them in this paragraph. In addition, LE states and alleges as follows:

74. VI has an implied covenant to perform its obligations under the Settlement Agreement in good faith and to deal fairly with LE.

75. The covenant operates by implying as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute.

76. Pursuant to this covenant, VI impliedly promised to LE that it would not intentionally or purposely do anything which would destroy or injure LE's right to receive the fruits of the Settlement Agreement. These fruits included both the value of the LE Pass-Through Claims and the retainage.

77. VI breached the covenant of good faith and fair dealing when it failed to disclose to LE that it had waived and released the LE Pass-Through Claims and continued to behave and conduct itself as if the LE Pass-Through Claims were still enforceable against HDJV, causing LE to rely on such omissions, statements, behavior, and conduct to its detriment.

78. VI's breach of the covenant of good faith and fair dealing intentionally and purposely frustrated one of the key purposes of the Settlement Agreement and destroyed and injured LE's right to receive the fruits of the Settlement Agreement.

79. All conditions precedent to asserting this claim have occurred, have been satisfied, or have otherwise been waived.

80. By reason of VI's breaches of the covenant of good faith and fair dealing, LE is entitled to judgment against VI in an amount of not less than $ 9,738,446.

## JURY DEMAND

LE, pursuant to Rule 38 Fed.R.Civ.P., hereby demands a jury to try all issues of fact triable to a jury herein.

## PRAYER

**WHEREFORE,** LE respectfully requests the Court enter Judgment in its favor as follows:

a) On the First Claim for Relief, LE's actual, direct, indirect, general, consequential, incidental, or other damages as allowed by Utah law, cost of suit, fees of experts, attorneys' fees, and interest;

b) On the Second Claim for Relief, LE's actual, direct, indirect, general, consequential, incidental, or other damages as allowed by Utah law, cost of suit, fees of experts, attorneys' fees, and interest;

c) On the Third Claim for Relief, LE's actual, direct, indirect, general, consequential, incidental, or other damages as allowed by Utah law, cost of suit, fees of experts, attorneys' fees, and interest;

d) On the Fourth Claim for Relief, LE's actual, direct, indirect, general, consequential, incidental, or other damages allowed by the Settlement Agreement and/or Utah law, cost of suit, fees of experts, and attorneys' fees as allowed by the Settlement Agreement and/or Utah law; and

e) On the Fourth Claim for Relief, LE's actual, direct, indirect, general, consequential, incidental, or other damages allowed by the Settlement Agreement and/or Utah law, cost of suit, fees of experts, and attorneys' fees as allowed by the Settlement Agreement and/or Utah law.

4851-3394-2201

g)   For such other and further relief as the Court deems just and proper.

DATED this 28th day of July, 2021.

        SNELL & WILMER L.L.P.


        /s/ *Mark O. Morris*
        Mark O. Morris

        and

        Joel D. Heusinger, No. 40866
        Kory D. George, No. 41058
        Woods | Aitken LLP
        7900 East Union Avenue, Suite 700
        Denver, Colorado 80237
        Phone: 303-606-6700
        Fax:    303-606-6701
        Email: jheusinger@woodsaitken.com
                kgeorge@woodsaitken.com

        *Attorneys for Plaintiff Ludvik Electric Co.*

Plaintiff's Address:   3900 S. Teller Street
                      Lakewood, CO  80235