Jonathan C. Williams (16194)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
jwilliams@parrbrown.com

Gina M. Vitiello, Esquire (*pro hac vice*)
John C. Guin, Esquire (*pro hac vice*)
CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY
191 Peachtree Street, NE, 46th Floor
Atlanta, GA 30303
Telephone: (404) 659-1410
Facsimile: (404) 659-1852
john.guin@chamberlainlaw.com

*Attorneys for Defendant Vanderlande Industries, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LUDVIK ELECTRIC CO., a Colorado corporation, <br><br> Plaintiff, <br><br> v. <br><br> VANDERLANDE INDUSTRIES INC., a Delaware corporation, <br><br> Defendant. | **MOTION FOR SUMMARY JUDGMENT (PARTIAL)** <br><br> Case No. 2:21-cv-00462 <br><br> Hon. Judge David Barlow |

## TABLE OF CONTENTS

I.   INTRODUCTION AND RELIEF REQUESTED ...........................................................1

     A.   INTRODUCTION ....................................................................................................1

     B.   RELIEF REQUESTED............................................................................................4

     C.   PROCEDURAL HISTORY/EVOLUTION OF LUDVIK'S FACTUAL
          ALLEGATIONS AS TO NEGLIGENT MISREPRESENTATION.....................4

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS............................................8

     A. OVERVIEW OF THE PROJECT ...............................................................................8

     B. LUDVIK'S PASS-THROUGH CLAIMS ...................................................................8

     C. HDJV AND VANDERLANDE HAD AN EXPRESS UNDERSTANDING THAT
        LUDVIK'S CLAIM DID NOT NEED TO BE INCLUDED ON THE CHANGE
        ORDER LOG...........................................................................................................10

     D. HDJV DENIED LUDVIK'S PASS-THROUGH CLAIMS IN AN OCTOBER 1,
        2019 LETTER, WHICH VANDERLANDE PASSED ON TO LUDVIK................11

     E. LUDVIK SETTLES WITH VANDERLANDE FOR $3.9 MILLION .....................12

     F. AFTER SETTLING WITH VANDERLANDE, LUDVIK SETTLED WITH HDJV
        FOR $24 MILLION AND AGREED TO RELEASE ITS PASS-THOUGH CLAIMS
        AGAINST HDJV—AND INDEMNIFY HDJV AGAINST THOSE CLAIMS........13

     G. VANDERLANDE SETTLED WITH HDJV ONLY AFTER LUDVIK SETTLED
        WITH HDJV AND RELEASED ITS PASS-THROUGH CLAIMS .........................14

III. ARGUMENT AND SUPPORTING AUTHORITIES..................................................14

     A.   LUDVIK'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT II)
          SHOULD BE DISSMISED BECAUSE IT FAILS AS A MATTER OF LAW
          AND UNDISPUTED FACT....................................................................................14

          1.   LUDVIK'S "NEGLIGENT MISREPRESENTATION" IS BARRED BY
               UTAH'S UNIFORM MEDIATION ACT..................................................16

          2.   UTAH'S ECONOMIC LOSS RULE AND THE SETTLEMENT
               AGREEMENT'S PLAIN LANGUAGE BAR ANY

MISREPRESENTATION CLAIM BASED ON THE PROVISIONS OF
SETTLEMENT AGREEMENT                                              17

    a.  LUDVIK'S "NEGLIGENT MISREPRESENTATION" CLAIM IS
       BARRED BY UTAH'S ECONOMIC LOSS RULE ......................... 17

    b.  LUDVIK'S "NEGLIGENT MISREPRESENTATION" CLAIM IS
       BARRED BY THE SETTLEMENT AGREEMENT'S PLAIN
       LANGUAGE ..................................................................................... 19

3.  TO THE EXTENT LUDVIK TRIES TO RE-ASSERT ITS "NEGLIGENT
    MISREPRESENTATION" CLAIM UPON THE NON-DISCLOSURE OF
    THE CHANGE ORDER LOG—SUCH A REVERSAL OF ITS POSITION
    WOULD FAIL AS A MATTER OF UNDISPUTED FACT
    AND LAW................................................................................................ 20

    a.  LUDVIK WAS MADE AWARE OF THE FACT THAT
       VANDERLANDE HAD NOT LISTED THE PASS-THROUGH
       CLAIMS ON THE CHANGE ORDER LOG .................................... 21

    b.  LUDVIK DID NOT RELY UPON ANY FACTS PERTAINING TO
       THE CHANGE ORDER LOG .......................................................... 22

    c.  LUDVIK HAS FAILED TO ESTABLISH THAT VANDERLANDE
       HAD A DUTY TO DISCLOSE ........................................................ 23

4.  LUDVIK'S "NEGLIGENT MISREPRESENTATION" CLAIM IS
    BARRED BY THE SETTLEMENT AGREEMENT'S MERGER CLAUSE,
    NON-RELIANCE CLAUSE, AND MUTUAL RELEASES................ 25

B.  LUDVIK'S "BREACH OF CONTRACT" CLAIM (COUNT IV) SHOULD BE
   DISSMISED BECAUSE IT FAILS AS A MATTER OF LAW AND
   UNDISPUTED FACT .................................................................................... 27

**1.**  POST-SETTLEMENT CHANGE ORDERS CONTAIN NO "WAIVER"
    LANGUAGE, BUT EVEN IF THEY DID, THOSE CHANGE ORDERS
    NEVERTHELESS COULD NOT HAVE DAMAGED LUDVIK ......... 28

    a.  POST-SETTLEMENT CHANGE ORDERS DO NOT REFERENCE
       EITHER THE ALLEGED "WAIVER" LANGUAGE OR THE
       CHANGE ORDER LOG AT ISSUE................................................ 29

    b.  LUDVIK'S "BREACH OF CONTRACT" CLAIM FAILS BECAUSE
       POST-SETTLEMENT CHANGE ORDERS NECESSARILY DID NOT
       DAMAGE LUDVIK.......................................................................... 30

c. LUDVIK'S "BREACH OF CONTRACT" CLAIM IS BARRED BECAUSE, BY THE TIME OF THAT SETTLEMENT, LUDVIK HAD ALREADY RELEASED ITS OWN PASS-THROUGH CLAIMS AND AGREED TO INDEMNIFY HDJV AGAINST THOSE SAME CLAIMS ............................................................................................32

C. LUDVIK'S "BREACH OF GOOD FAITH AND FAIR DEALING" CLAIM (COUNT V) SHOULD BE DISSMISED BECAUSE IT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT ........................................................34

IV. **CONCLUSION** ..................................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. W. Bank Members, L.C. v. State*,
   2014 UT 49, 342 P.3d 224 ...............................................................................34

*DeBry v. Valley Mortg. Co.*,
   835 P.2d 1000 (Utah Ct. App. 1992) ........................................................23, 24, 25

*Eleopulos v. McFarland & Hullinger, LLC*,
   2006 UT App 352, 145 P.3d 1157 ..............................................................31, 34

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*,
   2018 UT 61, 435 P.3d 193 ...............................................................................18

*KTM Health Care v. SG Nursing Home LLC*,
   2018 UT App 152, 436 P.3d 151 .......................................................................18

*McBroom v. Child*,
   2016 UT 38, 392 P.3d 835 ...............................................................................22

*McLaughlin v. Chief Consol. Mining Co.*,
   62 Utah 532, 220 P. 726 (1923) ......................................................................26

*Milestone Elec., Inc. v. Nice Incontact, Inc.*,
   No. 2:20-CV-00630, 2021 WL 2474095 (D. Utah June 17, 2021) .........................34

*Ockey v. Lehmer*,
   2008 UT 37, 189 P.3d 51 ...........................................................................26, 27

*Reighard v. Yates*,
   2012 UT 45, 285 P.3d 1168 .............................................................................18

*Smith v. Frandsen*,
   2004 UT 55, 94 P.3d 919 .................................................................................23

*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*,
   811 P.2d 194 (Utah 1991) ...............................................................................34

*Thurston v. Block United LLC*,
   496 P.3d 268 (Utah Ct. App. 2021) ..................................................................26

i

*Ward v. McGarry*,
   2022 UT App 62, 511 P.3d 1213 ............................................................................17

**Statutes**

Utah's Uniform Mediation Act (Utah Code Ann. § 78B-10-104).......................................3, 16, 17

**Other Authorities**

Federal Rule of Civil Procedure 9(b)..............................................................................5

Federal Rule of Civil Procedure 56 ...............................................................................1

## DEFENDANT VANDERLANDE INDUSTRIES, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Vanderlande Industries, Inc. ("Vanderlande") moves, pursuant to Federal Rule of Civil Procedure 56 and DUCivR 56-1, for partial summary judgment in this matter on the following counts of the Amended Complaint: Count II ("negligent misrepresentation"), and the portions of Counts IV ("breach of contract") and V ("breach of good faith and fair dealing") seeking recovery from Vanderlande for Ludvik Electric Co.'s ("Ludvik") Pass-Through Claims.

## I.   INTRODUCTION AND RELIEF REQUESTED

### A.  Introduction

This case arises out of a settlement agreement (the "Settlement Agreement") Vanderlande and Ludvik executed to resolve claims relating to a subcontract for the construction project at the Salt Lake City International Airport (the "Project").  *See* Ex. A, Settlement Agreement. Pursuant to the Settlement Agreement: (1) Vanderlande paid Ludvik $3.9 million to settle all direct claims between them; (2) the parties agreed that Ludvik would pursue the general contractor, HDJV, [1] for costs incurred by Ludvik that were caused by the actions and/or omissions of HDJV and/or owner (the "Pass-Through Claims"); (3) Vanderlande agreed to honor Ludvik's requests for "cooperation" in pursuing the Pass-Through Claims against HDJV; and (4) Vanderlande's liability to Ludvik for the Pass-Through Claims was limited to payment of only those amounts actually recovered from HDJV/the owner for those claims in excess of $1 million.

Ludvik entered the Settlement Agreement with Vanderlande fully aware that the Pass-Through Claims had already been rejected by HDVJ, and having HDJV's written reasons for

---

[1] As used herein, "HDJV" refers to Holder-Big-D Construction, A Joint Venture.

rejecting those claims—which included, inter alia, Ludvik's failure to comply with contractual requirements to present claims, Vanderlande's execution of change orders with HDJV and the omission of Ludvik's Pass-Through Claims from the change order logs. *See* Ex. B, October 1, 2019 letter from HDJV to Vanderlande.

 In short, Ludvik knew when it settled with Vanderlande that it would have to overcome any defenses raised by HDJV as to both Ludvik and Vanderlande, and that its recovery against HDJV for the Pass-Through Claims was not guaranteed. To the contrary, the Settlement Agreement expressly contemplates that there may be no recovery at all against HDJV for the Pass-Through Claims. *See* Ex. A, at 3, ¶ 5.a ("If after presentation and full prosecution of the LE Pass-Through Claims, no such award, judgment, and/or settlement and payment is made by or on behalf of HDJV on account of the LE Pass-Through Claims, then VI shall have no liability to LE whatsoever for the LE Pass-Through Claims.")

 Yet, without ever commencing litigation against HDJV and over the objection of Vanderlande, Ludvik abandoned its pursuit of the Pass-Through Claims in exchange for a deal with HDJV to settle all Project-related claims for over $24 million. In exchange for that $24 million payment (which Ludvik insists does not include any money for its Pass-Through Claims), Ludvik agreed to release HDJV and the owner from any liability for the Pass-Through Claims and agreed to indemnify HDJV and the owner in the event that Vanderlande attempted to pursue them for recovery of Ludvik's Pass-Through Claims (because Vanderlande was entitled to retain the first $1 million of any recovery from HDJV for the Pass-Through Claims that were allegedly "not included" in the $24 million settlement).

After recovering nearly $28 million from settlements with Vanderlande and HDJV, and having released HDJV and the owner from liability for all claims, Ludvik turned around and sued Vanderlande for the Pass-Through Claims asserting that Vanderlande had secretly "waived" the Pass-Through Claims by entering into change orders with HDJV, and that Vanderlande breached the Settlement Agreement by failing to fulfill its obligations to support Ludvik in the presentation and prosecution of its claims against HDJV. This lawsuit is Ludvik's third bite at the "Pass-Through Claims" apple. However, Ludvik's claims against Vanderlande for recovery on the Pass-Through Claims fail as a matter of law.

*Negligent Misrepresentation Claim.* Summary judgment should be granted on Ludvik's negligent misrepresentation claim because: (1) it is based upon facts that are inadmissible and protected by the Utah Mediation Act; (2) it is barred by the economic loss rule and the plain language of the Settlement Agreement; and/or (3) it is barred by the Settlement Agreement's merger clause, non-reliance clause, and mutual release. To the extent that Ludvik's negligent misrepresentation claim is based on any omission or non-disclosure by Vanderlande, summary judgment is warranted because:  (a) Ludvik was made aware that the alleged omitted material fact (i.e., its Pass-Through Claims were not on the Change Order Log); (b) Ludvik did not rely on the contents of the Change Order Log in entering into the Settlement Agreement; and (c) Vanderlande did not have a duty to disclose.

*Breach of Contract/Breach of Good Faith and Fair Dealing Claims.* Summary judgment should be granted on Ludvik's breach of contract claims for breach of duty of good faith and fair dealing (for recovery of Pass-Through Claims) because: (1) Ludvik abandoned pursuit of its Pass-Through Claims and released HDJV from liability in exchange for a settlement of $24 million; and

3

(2) post-settlement change orders signed by Vanderlande did not waive Ludvik's Pass-Through Claims; and (3).

### B. Relief Requested

This motion seeks summary judgment <u>only</u> as to Ludvik's Pass-Through Claims. More specifically, Vanderlande requests the following relief: (1) judgment as a matter of law in Vanderlande's favor as to Count II ("negligent misrepresentation") of the Amended Complaint; and (2) judgment as a matter of law in Vanderlande's favor as the portions of Counts IV ("breach of contract") and V ("breach of good faith and fair dealing") of the Amended Complaint seeking recovery of Ludvik's Pass-Through Claims. Vanderlande does not seek summary judgment as to Ludvik's breach of contract claim for Vanderlande's failure to pay $327,000 allegedly owed under the terms of the Settlement Agreement for "retainage," which is based on separate and distinct factual allegations and damages.

### C. Procedural History/Evolution of Ludvik's Factual Allegations as to Negligent Misrepresentation.

Ludvik has tried several ways to allege some "misrepresentation" by asserting various failures to disclose by Vanderlande, but the evidence keeps forcing Ludvik to change the precise allegations supporting its negligent misrepresentation claim. By contrast, Vanderlande's position has always been that <u>it did not waive</u> Ludvik's Pass-Through Claims,[2] and that Ludvik prematurely and unilaterally abandoned pursuit of those claims against HDJV for a lucrative side deal to avoid

---

[2] Vanderlande has not moved for summary judgment on the grounds that Ludvik's claims were not "waived" because the facts relating to that issue are in dispute at this point. Vanderlande disputes that its actions or inactions constitute a legal "waiver" of Ludvik's Pass-Through Claims, and believes that the conduct of HDJV before and after the Settlement Agreement, demonstrate that HDJV acted inconsistently with an intent to rely on any alleged written "waiver" by Vanderlande as an intentional relinquishment of Ludvik's claims.

paying Vanderlande any part of the recovery from HDJV for the Pass-Through Claims. Further, to the extent HDJV ever took the position that any actions or inactions of Vanderlande allegedly "waived" or precluded Ludvik's recovery of the Pass-Through Claims from HDJV, that information was shared with Ludvik in December 2019 (years before the Settlement Agreement). *See* Ex. B.

Because the specifics of the alleged misrepresentations by Vanderlande underlying Ludvik's argument have been, and remain, difficult to pin down, a brief history of Ludvik's nebulous and evolving position is explained below.

On July 31, 2021, Ludvik filed this lawsuit alleging that the Settlement Agreement was induced by fraud and misrepresentation on the part of Vanderlande. Ludvik alleged that, during a mediation held in June 2020, Vanderlande (or the mediator) had made affirmative representations to Ludvik that Vanderlande had "not waived" Ludvik's Pass-Through Claims. These representations made during mediation were alleged in support of Ludvik's claims for fraud, fraudulent concealment, and negligent misrepresentation. *See* Dkt. No. 2 ¶¶ 49-56, 60-66; Dkt. No. 34 ¶¶ 43-50, 66-73.

The fraud and fraudulent concealment claims were dismissed by the Court by order dated March 17, 2022, because they did not meet the requirements of pleading under Federal Rule of Civil Procedure 9(b).[3] *See* Dkt. No. 7; Ex. C, Transcript of March 17, 2022 Hearing at 8:19-11:8.

---

[3] The Court's dismissal of the fraud and fraudulent concealment counts of the Amended Complaint were without prejudice and Ludvik was given sixty days from the date of the order to file a motion seeking leave to file an amended complaint, but it did not do so. *See* Dkt. No. 47. Thus, the only claims in the Amended Complaint that are still pending are Counts II (negligent misrepresentation), Count IV (breach of contract) and Count V (breach of good faith and fair dealing).

Additionally, the Court held unequivocally that anything "that occurs during a mediation or is made for the purposes of considering, conducting, participating in, continuing, etc., the mediation, those items…can't form the basis of any causes of action." *See* Ex. C at 6:16-23.

The initial Complaint also alleged misrepresentation by omission or non-disclosure. More specifically, Ludvik alleged that Vanderlande failed to disclose that it had "waived" Ludvik's Pass-Through Claims by signing change orders between HDJV and Vanderlande (the "HDJV-Vanderlande Change Orders") with "waiver" language, cutting off any right to pursue Ludvik's claims against HDJV. The key fact supporting Ludvik's non-disclosure claim was that Vanderlande had failed to provide the HDJV-Vanderlande change orders [with the alleged waiver language] to Ludvik prior to the parties entering into the Settlement Agreement. *See* Dkt. No. 2 ¶¶ 29, 34-35. After Vanderlande provided written evidence to Ludvik showing that Vanderlande had, in fact, sent Ludvik copies of the HDJV-Vanderlande Change Orders before the parties' settlement, Ludvik amended its misrepresentation allegations to keep its claim alive given the undisputed fact that Ludvik had knowledge of the change orders with the purported "waiver" language before the Settlement Agreement was executed.

In its Amended Complaint, Ludvik acknowledged that it had the HDJV-Vanderlande Change Orders before entering the Settlement Agreement. *See* Dkt. No. 34 ¶¶ 20-21. Consequently, the key fact supporting its non-disclosure misrepresentation claim was revised to allege that Vanderlande failed to provide a "change order log" (the "Change Order Log") referenced in certain HDJV-Vanderlande Change Orders, which purportedly excluded certain claims/change order requests from any alleged waiver language in the change order. *Id.* ¶¶ 21-22, 25. Ludvik alleged that the failure of Vanderlande to provide the Change Order Log was "material"

and that "[b]ecause VI failed to disclose that the LE Pass-Through Claims were *not* on the Change Order Log, LE reasonably believed that its LE Pass-Through Claims were neither waived nor released." *Id.* ¶¶ 21-22. So, Ludvik initially argued that Vanderlande's misrepresentation was its failure to disclose the Vanderlande-HDJV Change Orders (until it was shown those allegations were demonstrably false), then later changed to arguing that Vanderlande's misrepresentation was its failure to disclose a Change Order Log showing that Ludvik's Pass-Through Claims had not been excluded from any alleged waiver language in certain Vanderlande-HDJV Change Orders.

Recent testimony from Ludvik's corporate representative, James Ludvik, revealed that the *current* bases for Ludvik's "negligent misrepresentation" claim are: (1) statements Vanderlande allegedly made at the parties' confidential mediation; and (2) contractual provisions allegedly contained within the parties' Settlement Agreement itself. *See* Ex. D, Ludvik 30(b)(6) Dep. at 10:14–11:17. Indeed, Ludvik's own counsel objected to questions about Ludvik's reliance on the contents of the "omitted" Change Order Log because Ludvik's "negligent misrepresentation" claim is apparently *not* based upon any alleged "omission." *Id.* at 22:23–23:1 (Mr. Morris: "I'm still concerned about the proposition that . . . Ludvik Electric relied on an omission. I don't know that we've claimed that.")

The reason for the latest change in Ludvik's position is likely because during discovery, it came to light that there was no "omission" or non-disclosure on Vanderlande's part with respect to the Change Order Log, as alleged in the Amended Complaint. Ludvik had been made aware of the fact that Vanderlande had not included the Pass-Through Claims on the Change Order Log as

in December 2019, eight months before entering into its Settlement Agreement with Vanderlande. *See* Ex. B; Ex. D at 41:17–20.[4]

The misrepresentation claims have come full circle—and once again are based on statements allegedly made in the course of mediation. The Court allowed Ludvik to conduct discovery to prove a "misrepresentation" by Vanderlande outside the mediation process, but Ludvik has been unable to do so. Instead, Ludvik has done precisely what this Court held it cannot do—assert claims based upon statements allegedly made at the mediation itself or in the context of mediation communications. The testimony of Ludvik's corporate representative is binding upon Ludvik, and so Ludvik should not be able to rely on any non-disclosure claims going forward, based on that testimony. However, out of an abundance of caution, Vanderlande has addressed the non-disclosure claims in this motion as well as Ludvik's claims based on affirmative representations and contractual provisions.

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

### A. OVERVIEW OF THE PROJECT

The Project involved the construction of a new passenger terminal and the renovation of existing areas at the Salt Lake City International Airport. (*See* Ex. E, Affidavit of Doug Alewelt ("Alewelt Aff.") ¶¶ 3-5. HDJV was the Project's general contractor. *Id.* ¶ 3. HJDV subcontracted with Vanderlande to provide a new baggage handling system as part of the Project. Vanderlande, in turn, sub-subcontracted with Ludvik to perform the electrical and mechanical work necessary

---

[4] Vanderlande's acknowledgement that it omitted the Pass-Through Claims from the Change Order Log is not an admission that it "waived" those claims. As explained in the Statement of Undisputed Material Facts, Vanderlande had an understanding with HDJV that Ludvik's Pass-Through Claims were not waived by Vanderlande signing change orders where the Ludvik Pass-Through Claims were not included on the Change Order Log.

to install that baggage handling system. *Id.* 4. Ludvik, however, also had a direct subcontract with HDJV to perform the electrical work on the terminal renovation portion of the Project, which was unrelated to Vanderlande's baggage handling system (i.e., Ludvik was both a direct subcontractor and sub-subcontractor of HDJV). *Id.* 5. Ludvik began performance of its work on the baggage handling system in late 2017. *Id.* 6. Due to performance problems and its failure to maintain progress with the Project schedule, Ludvik did not perform all of the work within the scope of its subcontract. *Id.* at 7.

### B. LUDVIK'S PASS-THROUGH CLAIMS

Ludvik's Pass-Through Claims consist of its increased labor costs that it alleges arose from the compression of its schedule and acceleration of its work as a result of Project delays caused by HDJV. *Id.* 7. The first time Ludvik made Vanderlande aware of Ludvik's intent to submit a claim was in a January 8, 2019 email. *Id.* Because Ludvik claimed that HDJV and the owner were the cause of the schedule compression and acceleration that led to its added costs, Ludvik was only entitled to compensation for such costs to the extent that Vanderlande received compensation from HDJV/the owner. *Id.* at 9; *see also,* Dkt. No. 34-1, Vanderlande-Ludvik Subcontract at 11.2. Accordingly, Ludvik's claim had to meet certain contractual requirements as to form and content to be submitted to HDJV for consideration and approval. *Id.* at 10. Ludvik's purported "claim" failed to meet those requirements. *Id.*

Over the next several months, Vanderlande repeatedly advised Ludvik that its "claim" was deficient and did not meet the requirements to be submitted as a "claim" to HDJV. *Id.* at 11. Vanderlande asked Ludvik several times to include information to reasonably substantiate the cause of the impacts to its work and to support the costs being claimed from HDJV. *Id.* Ludvik

updated its "claim" in February, May, and August 2019, but despite Vanderlande's repeated requests, Ludvik never modified its claim in the ways suggested by Vanderlande. *Id.* ¶ 12.

While Vanderlande was advising Ludvik to substantiate its Pass-Through Claims in a way that was contractually compliant," Vanderlande was also keeping HDJV aware of the status of Ludvik's "claim" and providing copies of updates and revisions to Ludvik's "claim" to HDJV, despite the non-compliant nature of its contents. *Id.* ¶ 13. HDJV and Vanderlande continually discussed the need for Ludvik to provide additional information to support the cause and amounts being claimed for the "claim" to be considered on its merits by HDJV. *Id.*

### C.  HDJV AND VANDERLANDE HAD AN EXPRESS UNDERSTANDING THAT LUDVIK'S CLAIM DID NOT NEED TO BE INCLUDED ON THE CHANGE ORDER LOG

In July 2019, HDJV prepared a change order (Change Order No. 22) to Vanderlande that included the following language:

> It is agreed and understood that all costs for changes initiated prior to January 1, 2019, have been received by HDJV and that no additional cost for change initiated during 2018 will be accepted. The attached Change Order Log dated June 19, 2019, identifies proposals that have been submitted, are currently under HDJV or Owner review, and will be incorporated into the Subcontract once approved.

*See* Ex. E, Alewelt Aff. at 14; Ex. F, HDJV-Vanderlande Change Order No. 22.

Vanderlande's Project Manager, Doug Alewelt, wanted to confirm the understanding between Vanderlande and HDJV that Ludvik's Pass-Through Claims did not need to be specifically referenced on the "Change Order Log" to be considered and evaluated by HDJV when it was ready to be submitted in a contractually compliant form. *See* Ex. E ¶ 15; Ex. G, July 23, 2019 Email from Vanderlande's Alewelt to HDJV.

HDJV assured Vanderlande in writing as follows:

[A]t this time Vanderlande's subtier [Ludvik] has not been able to provide documentation to support a claim for this project. **If/once a claim is presented that can be supported and comprehended, HDJV and VI can resolve at that time** – Signing of the pending SCO-22 for the current Exhibit S will not close the door on this potential claim.

See Ex. E ¶ 16; Ex. H, July 25, 2019 from HDJV to Vanderlande (emphasis added).

Doug Alewelt believed and understood this email from HDJV to mean there was no need for Vanderlande to list Ludvik's Pass-Through Claims on any version of the Change Order Log in order to be excluded from any "waiver" language in the change orders and to keep those claims open for evaluation and consideration by HDJV and the owner. See Ex. E ¶ 17.

### D. HDJV DENIED LUDVIK'S PASS-THROUGH CLAIMS IN AN OCTOBER 1, 2019 LETTER, WHICH VANDERLANDE PASSED ON TO LUDVIK

On August 15, 2019, Vanderlande submitted an updated version of Ludvik's Pass-Through Claims to HDJV. See Ex. E ¶ 18. By letter dated October 1, 2019, HDJV *denied* Ludvik's "claim" and provided eight separate reasons in support of that denial, including Ludvik's continued failure to properly substantiate its claim in compliance "with the Subcontract change justification requirements." *Id.; see also* Ex. B at p. 2 ¶ 2.g. HDJV also listed as a reason for rejection the fact that Vanderlande had not listed Ludvik's Pass-Through Claims on the Change Order Log. See Ex. B at p. 3, ¶ 6 (alleging that Ludvik's Pass-Through Claims are barred because they involve "changes not on the Change Order Log").

Vanderlande provided a copy of HDJV's October 1, 2019 denial letter to Ludvik on or about December 12, 2019. See Ex. E ¶ 20; Ex. I, December 18, 2019 letter from Ludvik's Donald Reinstein to Vanderlande's Alewelt. Ludvik's then-President Donald Reinstein sent Vanderlande a response to HDJV denial letter, but Mr. Reinstein never asked Vanderlande whether it had

preserved Ludvik's Pass-Through Claims on a change order log, and never did anything to investigate whether Ludvik's Pass-Through Claims were on the Change Order Log. *Id; see also* Ex. J, Reinstein Dep. at 116:16-21; 117:14-118:4.  In May 2020, Ludvik was provided copies of the Vanderlande-HDJV Change Orders, including Change Order 22 and 26 (without the referenced Change Order Logs attached).  *See* Ex. E ¶ 21.

### E.  LUDVIK SETTLES WITH VANDERLANDE FOR $3.9 MILLION

Ludvik and Vanderlande attended a mediation on June 12, 2020 to reconcile the Subcontract value and resolve all outstanding claims between them relating the Project, including Ludvik's direct claims against Vanderlande, Ludvik's Pass-Through Claims, and Vanderlande's claims against Ludvik.  The parties reached an agreement at the mediation. *See* Ex. E ¶ 22.  On August 24, 2020, Ludvik and Vanderlande executed the Settlement Agreement. *See* Ex. A. at ¶¶ 1, 5. Pursuant to the Settlement Agreement, (1) Vanderlande was to pay Ludvik $3.9 million[5]; (2) Ludvik agreed to pursue its Pass-Through Claims against HDJV; and (3) Vanderlande agreed to cooperate with Ludvik in pursuing the Pass-Through Claims against HDJV; (4) to the extent any money was recovered from HDJV for the Pass-Through Claims, Vanderlande was entitled to keep the first $1 million of such recovery.  Thus, Ludvik agreed that it would recover nothing for its Pass-Through Claims unless HDJV paid more than $1 million for those claims. *Id.* ¶ 7.

The Settlement Agreement expressly provided for a full and final release of Vanderlande applying to all claims "arising out of or in any way connected with the LE Work or the

---

[5] Ludvik's Amended Complaint also contains a claim for breach of contract which alleges that Vanderlande agreed to pay an additional $327,677 for retainage above the $3.9 million settlement payment.  Vanderlande disputes that claim, but that claim is based on different facts that are not relevant to the issues or the relief sought in this motion.

Subcontract." *Id.* ¶ 5.c.  The Settlement Agreement also expressly provided that it was "executed without reliance upon any representation by any person concerning the nature of extent of damages or legal liability therefor." *Id.* ¶ 12.

**F.   AFTER SETTLING WITH VANDERLANDE, LUDVIK SETTLED WITH HDJV FOR $24 MILLION AND AGREED TO RELEASE ITS PASS-THOUGH CLAIMS AGAINST HDJV—AND INDEMNIFY HDJV AGAINST THOSE CLAIMS**

Following the Settlement Agreement, Vanderlande assisted Ludvik with the presentation its Pass-Through Claims to HDJV.  Ludvik provided a copy of its revised Pass-Through Claims to Vanderlande on September 4, 2020. *See* Ex. E ¶ 25. On or about September 17, 2020 Vanderlande set up a meeting to provide constructive feedback to Ludvik on the revised claim and to discuss "next steps" for pursuing those claims against HJDV. *Id.* After the meeting, on September 18, 2020, Vanderlande provided HDJV with the updated version of Ludvik's Pass-Through Claims. *Id.*

On October 19, 2020, HDJV sent a response letter to Vanderlande, requesting additional information supporting the Pass-Through Claims and requesting Vanderlande's analysis of Ludvik's Pass-Through Claims. *Id.* ¶ 26.  Vanderlande shared HDJV's letter with Vanderlande and obtained additional information from Ludvik to give to HDJV. *Id.* Vanderlande also shared its draft evaluation of the Pass-Through Claims with Ludvik and sought Ludvik's input for changes and approval before sending the evaluation to HDJV.  *Id.*

Ludvik never asked Vanderlande to file a lawsuit or other legal proceeding against HDJV for the Pass-Through Claims. *Id.* at ¶27.  Instead, a mediation was held on December 8, 2020 between HDJV, Ludvik, and Vanderlande. *Id.* At that mediation, Ludvik and HDJV reached a settlement, which included: (1) a payment to Ludvik of $24 million; (3) Ludvik's release of HDJV

and the owner for any liability for the Pass-Through Claims; and (4) Ludvik's agreement to indemnify HDJV and the owner for the Pass-Through Claims if Vanderlande pursued those claims against HDJV and the owner. *See* Ex. K, Ludvik-HDJV Settlement at §§ 3, 6b, 9.  Ludvik asserts that the payment of $24 million did not include any payment for Pass-Through Claims.  *See* Ex. L, James Ludvik Dep. at 99:16-101:4.  However, following that agreement, Ludvik stopped pursuing HDJV for the Pass-Through Claims.

### G. VANDERLANDE SETTLED WITH HDJV ONLY AFTER LUDVIK SETTLED WITH HDJV AND RELEASED ITS PASS-THROUGH CLAIMS

In early 2021, Vanderlande was in the process of negotiating a final close-out of its work on the Project with HDJV.  Prior to entering into a final settlement with HDJV, however, Vanderlande obtained a copy of the Ludvik-HDJV Settlement, and verified that Ludvik had, in fact, disposed of its Pass-Through Claims as described above. *See* Ex. E ¶ 28.

On March 5, 2021—*after* receiving confirmation that Ludvik had already resolved and released HDJV and the owner for its Pass-Through Claims—Vanderlande entered into a settlement with HDJV (the "Vanderlande-HDJV Settlement") for outstanding payments owed to Vanderlande for contract balance and open change order requests. *See* Ex. M, Vanderlande-HDJV Settlement Agreement.  Vanderlande's settlement with HDJV did not include any payment for Ludvik's Pass-Through Claims. *Id.* ¶ 29.

## III. ARGUMENT AND SUPPORTING AUTHORITIES

### A. LUDVIK'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT II) SHOULD BE DISSMISED BECAUSE IT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT

Ludvik's "negligent misrepresentation" claim alleges that, "[b]etween June 12 and August 24, 2020" (*i.e.*, during the parties' confidential mediation process), an unidentified

individual allegedly made "false" "inducements, representations, and statements . . . about the status of the . . . Pass-Through Claims." *See* Dkt. No. 34 ¶ 58.

Ludvik's 30(b)(6) representative—Jim Ludvik ("Mr. Ludvik")—recently clarified that this "negligent misrepresentation" claim is based upon (1) statements made during the "mediation itself"; and (2) the written statements in the parties' actual Settlement Agreement. To that end, Mr. Ludvik testified as follows:

> Q:   I asked what the statements, inducements, and representations were that Vanderlande had made in that period of time that were false that induced Ludvik to enter into the settlement agreement.
>
> A:   The – first of all, the settlement agreement was negotiated between [Vanderlande's] attorneys and our attorneys . . . But in that agreement were representations from [Vanderlande] to Ludvik that would indicate that they preserved our – the pass-through claim . . . And there were several references to [Vanderlande] in the agreement that everything was on track.
>
> Q:   And when you say the agreement, you mean the settlement agreement –
>
> A:   Correct. The one that was signed in August.
>
> Q:   Okay. Outside of that settlement agreement and the words on those pages, were there any representations or statements or inducements that Vanderlande made which Ludvik believes were false and which induced it to enter into that agreement?
>
> A:   There were statements made at the mediation itself.

*See* Ex. D at 10:14–11:17.  Consistent with the above-quoted testimony, Ludvik's own counsel clarified during Ludvik's 30(b)(6) deposition that Ludvik's "negligent misrepresentation" claim is *not* based upon any alleged "omission." *Id.* at 22:23–23:1 (Mr. Morris: "I'm still concerned about the proposition that . . . Ludvik Electric relied on an omission. I don't know that we've claimed that.").

Ludvik's "negligent misrepresentation" claim fails because it is barred by both Utah's Uniform Mediation Act and this Court's March 17, 2022 Order. It is also barred by Utah's economic loss rule and the Settlement Agreement's plain language, including but not limited to the merger clause, non-reliance clause, and mutual releases. To the extent it is based upon any "omission" pertaining to the Change Order Log (which would be contrary to Ludvik's current position), it is barred because (a) Vanderlande expressly disclosed in December 2019 that Ludvik's Pass-Through Claims were not on the Change Order Log; (b) Ludvik concedes it did not rely upon any fact relating to the Change Order Log in executing the Settlement Agreement; and (c) Ludvik has not proven Vanderlande had a legal duty to disclose any fact that was not actually disclosed.

## 1. LUDVIK'S "NEGLIGENT MISREPRESENTATION" IS BARRED BY UTAH'S UNIFORM MEDIATION ACT.

Utah's Uniform Mediation Act—like other similar statutes throughout the country—precludes the use of mediation statements during litigation. *See* Utah Code Ann. § 78B-10-104 ("[A] mediation communication is privileged . . . and is not subject to discovery or admissible in evidence in a proceeding."). Consistent with this law, this Court ruled during the hearing on Vanderlande's Motion to Dismiss Ludvik's Amended Complaint as follows:

> Now, I want to make this clear. This is an issue that is relevant to all of the causes of action here, so I'm just going to restate again the relevant portion of the Utah statute: Anything, quote, that occurs during a mediation or is made for purposes of considering, conducting, participating in, continuing, etc., the mediation, those items are not going to be part of this lawsuit. **They can't form the basis of any cause of action**.

*See* Ex. C, Transcript of Mar. 17, 2022 Hearing at 6:16–23 (emphasis added).

In contravention of both this Court's prior ruling and the Utah Uniform Mediation Act's plain language, Ludvik's corporate representative just recently affirmed that Ludvik's "negligent

misrepresentation" claim is, in fact, based upon statements made during the "mediation itself." *See* Ex. D, Ludvik 30(b)(6) Dep. 11:11–17. Indeed, Ludvik's Amended Complaint itself expressly alleges Ludvik's "negligent misrepresentation" claim is premised upon alleged misrepresentations made between June 12, 2020 (*i.e.*, the date of the parties' mediation) and August 24, 2020 (*i.e.*, the date the Settlement Agreement arising out of that mediation was executed). *See* Dkt. No. 34 at ¶¶ 26, 29, 50. Utah's Uniform Mediation Act and this Court's prior ruling collectively preclude Ludvik from basing its "negligent misrepresentation" claim upon any of these mediation communications.

## 2. UTAH'S ECONOMIC LOSS RULE AND THE SETTLEMENT AGREEMENT'S PLAIN LANGUAGE BAR ANY MISREPRESENTATION CLAIM BASED ON THE PROVISIONS OF SETTLEMENT AGREEMENT.

Ludvik's corporate representative also testified that Ludvik's "negligent misrepresentation" claim is based, in part, upon *alleged* representations contained in the parties' Settlement Agreement. *See* Ex. D, Ludvik 30(b)(6) Dep. at 10:14–11:10. This portion of Ludvik's "negligent misrepresentation" claim fails for two reasons: (1) it is barred by Utah's economic loss rule, which precludes tort claims based upon contracts; and (2) it is barred by the Settlement Agreement's plain language, which contains no representations from Vanderlande regarding the Pass-Through Claims' viability, but instead expressly states the Pass-Through Claims may be worth *nothing*.

### a. Ludvik's "negligent misrepresentation" claim is barred by Utah's economic loss rule.

Under Utah's economic loss rule, "[i]f the tort alleges a breach of a duty that the contract itself imposes . . . the plaintiff can sue only for contract-based remedies." *Ward v. McGarry*, 2022 UT App 62, ¶ 22, 511 P.3d 1213, 1219 (quoting *KTM Health Care v. SG Nursing Home LLC*,

2018 UT App 152, ¶ 70, 436 P.3d 151) (affirming the dismissal of various tort claims, including a negligent misrepresentation claim, under Utah's economic loss rule). That is, "[t]he economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute." *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168, 1174.

Stated differently, "where the party's tort claim is a mere duplication of its breach of contract claim, there is no exception to the economic loss rule. The tort claim is barred." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 10, 435 P.3d 193, 196. Thus, Utah courts have previously dismissed negligent misrepresentation claims where "'the exact same conduct [was] described in both the contract and tort claims.'" *KTM Health*, 2018 UT App 152, ¶ 75 (quoting *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 53, 70 P.3d 1, 14) (dismissing a variety of tort claims under the economic loss rule, including a negligent misrepresentation claim).

Here, Ludvik's corporate representative recently testified that its "negligent misrepresentation" claim is based on obligations *allegedly* imposed by the parties' Settlement Agreement. *See* Ex. D, Ludvik 30(b)(6) Dep. at 10:14–11:10. This portion of Ludvik's "negligent misrepresentation" claim—*i.e.*, the portion premised upon the parties' Settlement Agreement—is plainly barred by Utah's economic loss rule. *See KTM Health*, 2018 UT App 152, ¶ 71 ("If the tort alleges a breach of a duty that the contract itself imposes, then the claim is barred; the plaintiff can sue only for contract-based remedies."). To the extent Ludvik contends Vanderlande somehow breached representations made in the Settlement Agreement itself, Ludvik must sue for breach of contract—not for "negligent misrepresentation."

18

**b. Ludvik's "negligent misrepresentation" claim is barred by the Settlement Agreement's plain language**

The central problem is that Ludvik inexplicably—and *incorrectly*—believes that the Settlement Agreement contains provisions whereby Vanderlande warranted (expressly or impliedly) the viability and recovery of Ludvik's Pass-Through Claims. Ludvik's corporate representative testified that the basis for claiming misrepresentation based on the provisions of the Settlement Agreement is the fact that it contains purported "representations from [Vanderlande] to Ludvik that would indicate that they preserved our – the pass-through claim[.]" *See* Ex. D, Ludvik 30(b)(6) Dep. at 11:1–3. This hearsay testimony is simply not true; the Settlement Agreement contains no such representations.

First, there are no express representations by Vanderlande in the Settlement Agreement as to viability or probability of success for the Pass-Through Claims. To the contrary, the Settlement Agreement expressly contemplates that Ludvik may recover nothing for the Pass-Through Claims after "presentation and full prosecution" of HDJV:

> If after presentation and full prosecution of LE Pass-Through Claims, no such award, judgment and/or settlement and payment is made by or on behalf of HDJV . . . then [Vanderlande] shall have no liability to [Ludvik] whatsoever for the LE Pass-Through Claims.

*See* Ex. A, Settlement Agreement ¶ 5.a.

This provision makes it clear that both parties understood that HDJV would assert defenses against the Pass-Through Claims and potentially prevail. HDJV had already expressed its reasons for rejecting the Pass-Through Claims in its October 1, 2019 letter, which Vanderlande provided to Ludvik, who therefore also had *actual* knowledge of HDJV's defenses prior to the Settlement Agreement. *See* Ex. I, Reinstein December 18, 2019 Letter.

It is actually *Ludvik—not Vanderlande*—who expressly warranted the "validity" of its Pass-Through Claims in the body of the Settlement Agreement: "LE [Ludvik] represents that it has investigated the validity of its claims . . . and reasonably believes that the LE Pass-Through Claims . . . have merit." *See* Ex. A, Settlement Agreement ¶ 10. Correspondingly, *Ludvik agreed to indemnify Vanderlande* in the event the Pass-Through Claims were determined to be "false, fraudulent, or . . . pursued in bad faith." *Id.* In short, Ludvik's purported basis for its "negligent misrepresentation" claim—*i.e.*, that Vanderlande impliedly warranted the viability of the Pass-Through Claims in the Settlement Agreement—is in direct conflict with the actual words on the page of the Settlement Agreement itself.

**3.   TO THE EXTENT LUDVIK TRIES TO RE-ASSERT ITS "NEGLIGENT MISREPRESENTATION" CLAIM UPON THE NON-DISCLOSURE OF THE CHANGE ORDER LOG—SUCH A REVERSAL OF ITS POSITION WOULD FAIL AS A MATTER OF UNDISPUTED FACT AND LAW**

As explained above, Ludvik's corporate witness recently affirmed that Ludvik's "negligent misrepresentation" claim is *not* based upon Vanderlande's alleged failure to disclose the Pass-Through Claims' omission from the Change Order Log. *See* Ex. D, Ludvik 30(b)(6) Dep. at 10:14–11:17; 22:23–23:1. Nevertheless, Vanderlande addresses this issue out of an abundance of caution.

To the extent Ludvik disavows its current position, and instead claims its "negligent misrepresentation" claim is actually based upon Vanderlande's alleged failure to disclose the omission of the Pass-Through Claims from the Change Order Log, such a claim would nevertheless fail.  First and foremost, Vanderlande *did* disclose that fact by providing Ludvik with a copy of HDJV's October 1, 2019 denial letter, which expressly stated that the Pass-Through Claims were not on the Change Order Log. Second, Ludvik has expressly admitted it did not rely

upon any facts pertaining to the Change Order Log in entering into the Settlement Agreement. Finally, Vanderlande had no legal duty to disclose anything that was not actually disclosed.

### a. Ludvik was made aware of the fact that Vanderlande had not listed the Pass-Through Claims on the Change Order Log.

As mentioned above, Vanderlande expressly disclosed that Ludvik's Pass-Through Claims were *not* listed on the Change Order Log. More specifically, Vanderlande disclosed that fact by providing Ludvik with a copy of HDJV's October 1, 2019 denial letter. In that letter, HDJV listed a whole slew of reasons for denying Ludvik's Pass-Through Claims—including (among many other reasons) that those claims had been omitted from the Change Order Log. *See* Ex. B, HDJV's Oct. 1, 2019 Denial Letter at p. 3, ¶ 6 (alleging that Ludvik's Pass-Through Claims are barred because they involve "changes not on the Change Order Log").

Importantly, Ludvik admits it received a copy of HDJV's October 1, 2019 letter on December 12, 2019—eight months *before* Ludvik executed the Settlement Agreement. *See* Ex. D, Ludvik 30(b)(6) Dep. at 41:17–20 (Q: "So do you agree with me that Ludvik received a copy of the HDJV October 1, 2019 letter on or about December 12, 2019? A: Correct."); Ex. I. Thus, contrary to what Ludvik claims in its Amended Complaint, Ludvik had *actual* knowledge at the time of the Settlement Agreement that HDJV was asserting a defense based on the omission of the Pass-Through Claims from the Change Order Log.

Vanderlande disputes that the omission of the Pass-Through Claims from the Change Order Log constituted "waiver" of those claims because of the conduct and statements by HDJV expressly and impliedly showing that the omission of the Pass-Through Claims from the Change Order Log would not be deemed by HDJV as a "waiver" by Vanderlande. *See* Ex. E, Alewelt Aff. at ¶¶ 14-17, 26; Exs. G, H. However, even after reviewing and responding to HDJV's October 1,

2019 letter, Ludvik never asked Vanderlande whether it had included Ludvik's Pass-Through Claims on the Change Order Log (as stated by HDJV in the letter) or asked for a copy of the Change Order Log to determine for itself whether HDJV's statement was true.  *See* Ex. E, Alewelt Aff. ¶ 20; Ex. I.  Ludvik's interest in the contents of the Change Order Log did not arise after its original factual allegations underlying its non-disclosure claim (i.e., the failure to provide copies of the HDJV-Vanderlande Change Orders) was proven to be demonstrably false.

### b.  Ludvik did not rely upon any facts pertaining to the Change Order Log.

To the extent Ludvik bases its "negligent misrepresentation" claim upon an alleged "omission" regarding the Change Order Log, Ludvik must demonstrate that it "reasonably relied" upon such allegedly-omitted fact in executing the Settlement Agreement. *See McBroom v. Child*, 2016 UT 38, ¶ 20, 392 P.3d 835, 842 (the plaintiff alleging negligent misrepresentation must demonstrate it was "injured by **reasonable reliance** upon a second party's careless or negligent misrepresentation of a material fact") (emphasis added). Ludvik's "negligent misrepresentation" claim thus fails for the additional reason that Ludvik admits it did not rely upon any fact—or the omission of any fact—regarding the Change Order Log in executing the Settlement Agreement.

To that end, Ludvik's own corporate representative—who himself signed the Settlement Agreement—*conceded* that (1) he did not even review the Vanderlande-HDJV change orders (which expressly reference the Change Order Log) before signing the Settlement Agreement; and (2) he did not rely upon any facts pertaining to those change orders in deciding to execute the Settlement Agreement:

> Q:  But you didn't even look at any change orders between Vanderlande and Holder before you signed the settlement agreement, correct?

> A:  That's correct.

Q:      Okay. So you – in entering into the settlement agreement with Vanderlande, you were not relying on anything you saw in any of those change orders or didn't see; is that correct?

A:      I was relying on representation from VI [made during the mediation itself].

*See* Ex. C, Ludvik's 30(b)(6) Dep. at 30:15–23. Ludvik's corporate representative further confessed that Ludvik did not even view the Change Order Log as important:

Q:      Do you think that it was important for you to know in deciding whether or not to pursue Holder directly as to whether or not your claim was on the change order logs . . . ?

A:      No.

*Id.* at 77:9–14.

As demonstrated by the above testimony, Ludvik itself concedes it did not enter into the Settlement Agreement based upon some misguided belief it had about the Change Order Log or whether its Pass-Through Claims were on it (contrary to what Ludvik alleged its Amended Complaint). Thus, to the extent based upon the non-disclosure of the Change Order Log, Ludvik's "negligent misrepresentation" claim fails because Ludvik did not reasonably rely upon any misrepresentation or omission pertaining to the Change Order Log.

**c.   Ludvik has failed to establish that Vanderlande had a duty to disclose.**

"[A]n omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose." *Smith v. Frandsen*, 2004 UT 55, ¶ 11, 94 P.3d 919, 923. "Thus, a duty to disclose is a necessary element of the tort of negligent misrepresentation." *Id.* "The issue of whether a duty exists is entirely a question of law to be determined by the court." *Id.* ¶ 14.

"A duty to speak will be found from all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties." *DeBry v. Valley*

23

*Mortg. Co.*, 835 P.2d 1000, 1007 (Utah Ct. App. 1992) (internal quotation marks and citations omitted). Generally, a duty to disclose "may exist" where "those circumstances include a relation of trust or confidence" between the parties or where "special circumstances" exist. *Id.* On the other hand, "[a] duty to speak will not be found where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties." *Id.* "**Under such circumstances, the plaintiff is obliged to take reasonable steps to inform himself and to protect his own interests**." *Id.* (emphasis added).

Here, there was no "relation of trust or confidence" between the parties or other "special circumstances." More importantly, it is undisputed that Vanderlande provided Ludvik with a copy of the change orders it entered into with HDJV—*i.e.*, the change orders containing the purported "release" language Ludvik is allegedly so concerned about. Furthermore, Vanderlande provided Ludvik with a copy of HDJV's October 1, 2019 denial letter, which lists all of HDJV's reasons for denying the Pass-Through Claims—including those claims' omission from the Change Order Log. *See* Ex. B.  To reiterate: Vanderlande disclosed HDJV's *own* explanation for why it denied Ludvik's Pass-Through Claims. Ludvik has failed to establish that Vanderlande had a duty to disclose anything beyond HDJV's own, written explanation of its defenses to Ludvik's Pass-Through Claims.  Ludvik's argument that Vanderlande failed to disclose that it had "waived" Ludvik's claims is nonsensical.  Whether Vanderlande actions or inactions are deemed to be a "waiver" is a legal conclusion that has never been litigated or decided by a Court.  Vanderlande has always believed and taken the position that it did not waive Ludvik's Pass-Through Claims and that HDJV's actions and statements before and after the Settlement Agreement also show that HDJV did not consider the Pass-Through Claims as "waived" by Vanderlande's signing of change

24

orders or the omitting the Pass-Through Claims from the Change Order Log.  *See* Exs. G, July 23, 2019 email from Vanderlande to HDJV; H, July 25, 2019 email from HDJV to Vanderlande.

Moreover, Ludvik's failure to "take reasonable steps to inform [itself] and to protect [its] own interests" mandates against a finding of any duty on the part of Vanderlande. *See DeBry*, 835 P.2d at 1007.  As early as December 2019, Ludvik had in its *actual* possession HDJV's denial letter stating that Ludvik's Pass-Through Claims were not on the Change Order Log. *See* Ex. I, Reinstein December 18, 2019 Letter.  Ludvik never asked for a copy of the Change Order Log and never made any inquiries to Vanderlande about whether HDJV's statement in the October 1, 2019 letter was true. *See* Ex. J, Reinstein Dep. at 116:16-21; 117:14-118:4.  Ludvik became aware of the issue in December 2019, and had the opportunity and ability to determine whether its Claims were on the Change Order Log well before entering into the Settlement Agreement with Vanderlande.

### 4. LUDVIK'S "NEGLIGENT MISREPRESENTATION" CLAIM IS BARRED BY THE SETTLEMENT AGREEMENT'S MERGER CLAUSE, NON-RELIANCE CLAUSE, AND MUTUAL RELEASES

Regardless of which alleged "representations" or "omissions" provide the purported basis for Ludvik's "negligent misrepresentation" claim, that claim fails as a matter of law because it is barred by the Settlement Agreement's merger clause, non-reliance clause, and mutual releases.

The Settlement Agreement contains a combined merger and non-reliance clause, which provides (1) Ludvik entered into the Settlement Agreement "without reliance upon any representations by any person concerning the nature or extent of damages or legal liability therefor"; and (2) the Settlement Agreement "contains the entire agreement between the parties hereto." *See* Ex. A, Settlement Agreement ¶ 12. In other words, in executing the Settlement

Agreement, Ludvik warranted that it was doing so *without* having been induced by some alleged, pre-contract "representation."

Further, the Settlement Agreement contains mutual releases, which provide that Ludvik released all claims against Vanderlande, "whether of tort, contract or otherwise, or of whatsoever nature, arising out of or under or relating to . . . the Project." *Id.* ¶ 5a.  Ludvik's "negligent misrepresentation" claim is a tort claim relating to the Project, and thus falls within the ambit of this release.

Significantly, Ludvik has made the choice *not* to rescind the Settlement Agreement. Instead, Ludvik has chosen to affirm the Settlement Agreement and sue for purported damages— ostensibly because Ludvik does not want to return the $3.9 million it has already been paid thereunder. *See Thurston v. Block United LLC*, 496 P.3d 268, 273 (Utah Ct. App. 2021) ("[U]nder Utah contract law, a party who has been induced to enter a contract by fraudulent [or negligent] misrepresentations has two options: (1) it may elect to rescind the contract [and return the consideration received] or (2) it may affirm the contract.").

Thus, Ludvik's "negligent misrepresentation" claim is precluded by the Settlement Agreement's express mutual releases.  *See, e.g., McLaughlin v. Chief Consol. Mining Co.*, 62 Utah 532, 220 P. 726, 728 (1923) ("[A] releasor cannot maintain an action for damages sustained by him until he has had the release rescinded in an equitable proceeding."); *see also Ockey v. Lehmer*, 2008 UT 37, ¶ 18, 189 P.3d 51, 59 ("Once ratified, the voidable contract or deed is deemed valid."). As explained by the Utah Supreme Court, "an individual cannot go along with a contract for the purpose of enjoying benefits . . . made possible as a result of the contract, only to later claim a

right to rescind when he discovers the benefits . . . will not be great enough to compensate him for the loss he will sustain by reason of the fraud." *Ockey*, 2008 UT 37, ¶ 32.

**B. LUDVIK'S "BREACH OF CONTRACT" CLAIM (COUNT IV) SHOULD BE DISSMISED BECAUSE IT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT.**

The portion of Ludvik's "breach of contract" claim at issue vaguely alleges that Vanderlande "fail[ed] to reasonably cooperate with [Ludvik]" and "failed[ed] to take reasonable steps to support the . . . Pass-Through Claims." *See* Dkt. No. 34 ¶ 76. The claim, however, fails to identify a single, specific fact supporting these allegations.[6]

Regardless, Ludvik's corporate representative recently clarified that Ludvik's "breach of contract" claim is based upon two allegations: (1) Vanderlande continuing to sign change orders with HDJV after executing the parties' Settlement Agreement; and (2) Vanderlande entering into its own settlement with HDJV (the "Vanderlande-HDJV Settlement"). To that end, Ludvik's corporate representative testified as follows:

> Q:  Okay. What were those actions [by which you contend Vanderlande breached the Settlement Agreement]?
>
> A:  I think they signed additional change orders without this claim being adhered to, and then they made a final settlement and waived it again. So there was multiple waivers after the settlement.

*See* Ex. D, Ludvik 30(b)(6) Dep. at 95:19–96:8. Both of these purported bases fail to support Ludvik's "breach of contract" claim for the following reasons:

(1) The post-Settlement Agreement change orders Vanderlande signed do not reference either the purported "waiver" language or the Change Order Log at issue. Indeed,

---

[6] Rather, Count IV's factual allegations are limited to supporting Ludvik's claim for $327,677 in unpaid "retainage"— which is not at issue in this motion. *See generally* Dkt. No. 34 ¶¶ 74–79.

Ludvik has been unable to explain why these post-settlement change orders even matter.

(2) Assuming *arguendo* the post-Settlement Agreement change orders do contain "waiver" language similar to change orders signed by Vanderlande prior to the execution of the Settlement Agreement (which they do not), then the post-Settlement Agreement change orders would have had no effect on Ludvik's claims.

(3) With regard to the Vanderlande-HDJV Settlement, Ludvik's argument on this point is frivolous. Vanderlande settled with HDJV only *after* Ludvik entered in the Ludvik-HDJV Settlement, in which Ludvik released its own Pass-Through Claims against HDJV and agreed to indemnify HDJV against those claims.

## 1.  POST-SETTLEMENT CHANGE ORDERS CONTAIN NO "WAIVER" LANGUAGE, BUT EVEN IF THEY DID, THOSE CHANGE ORDERS NEVERTHELESS COULD NOT HAVE DAMAGED LUDVIK.

To the extent based upon post-Settlement Agreement change orders, Ludvik's "breach of contract" fails because those change orders simply do not reference either the alleged "waiver" language or the Change Order Log at issue. Moreover, assuming *arguendo* those post-settlement change orders do contain some sort of alleged "waiver" provision (which they do not), those change orders could necessarily not have harmed Ludvik. This is so because, to the extent any waiver occurred at all (which is a vigorously disputed issue), such a "waiver" necessarily occurred *prior to* the parties' Settlement Agreement (which is precisely what Ludvik alleges in its Amended Complaint).

### a. Post-Settlement change orders do not reference either the alleged "waiver" language or the Change Order Log at issue.

Ludvik's Amended Complaint focuses on Change Order 26, which contains alleged "waiver" language referencing a "Change Order Log." *See* Dkt. No. 34 ¶¶ 21–22. More specifically, the purported "waiver" language in dispute is as follows:

> Vanderlande Industries – It is agreed and understood that all costs for changes initiated prior to June 1, 2019 have been received by HDJV and that no additional cost for changes initiated prior to this date will be accepted. The attached Change Order Log dated 09/20/2019 identifies proposals that have been submitted, are currently under HJDV or Owner review, and will be incorporated into the Subcontract once approved.

*See* Ex. M, Change Order 26. The Amended Complaint does not specifically reference any alleged "waiver" language contained in any post-settlement change order.

That said, between the time of the parties' Settlement Agreement on August 24, 2020 and the subsequent HDJV-Ludvik Settlement Agreement on December 9, 2020, Vanderlande did execute five unrelated change orders—Change Order Nos. 32–36. *See* Ex. N, Change Order Nos. 32–36. None of those change orders contains language even remotely similar to the alleged "waiver" provision quoted above. Indeed, none of those change orders references any sort of "Change Order Log." Tellingly, even when asked directly, Ludvik's corporate representative could not explain how any post-settlement change orders actually impacted the viability of Ludvik's Pass-Through Claims. *See* Ex. D, Ludvik 30(b)(6) Dep. at 97:15–21.

In short, to the extent based upon post-settlement change orders, Ludvik's "breach of contract" claim fails because those change orders did not actually impact Ludvik's Pass-Through Claims. Thus, Vanderlande did not breach any express or implied obligation in the Settlement Agreement by signing those Change Orders and, similarly, Ludvik suffered no resultant damages.

**b. Ludvik's "breach of contract" claim fails because post-Settlement change orders necessarily did not damage Ludvik.**

As explained above, the post-settlement change orders do not reference either the alleged "waiver" language or the Change Order Log in dispute. Those change orders do, however, contain a boilerplate paragraph, which is included in *all* of the HDJV-Vanderlande change orders (*i.e.*, because it is a boilerplate provision, it is included in *every* change order). *See, e.g.,* Ex. M, Change Order 26 at p. 2. In summary, the boilerplate precludes a party from being awarded a change order for extra work, and then coming back later and requesting additional compensation for that same extra work. To that end, the boilerplate provides, in pertinent part, that (1) the change order "represents full compensation **for the work referenced in the [Subcontract Change Order]**"; and (2) the change order includes "all changes and effects (direct, indirect, consequential, including impacts and cumulative impacts) **associated with this [Subcontract Change Order] work**." *Id.* (emphasis added). Importantly, the boilerplate paragraph does *not* state it constitutes a "waiver" of work *not* "referenced in" the change order.

As an initial matter, Ludvik does not even reference the boilerplate language in its Amended Complaint. However, given that there is nothing else in the post-settlement change orders for Ludvik to latch onto, we anticipate that Ludvik will nevertheless try to rely on the boilerplate language now out of simple necessity. Accordingly, we expect Ludvik to argue that the boilerplate language somehow "waived" its Pass-Through Claims, and that Vanderlande consequently "breached" the Settlement Agreement by signing post-settlement change orders containing the boilerplate language. This anticipated argument fails for *at least* two undisputed reasons: (1) HDJV itself never presented a defense based upon the boilerplate language; and (2)

the boilerplate language is included in *all* change orders; thus, the post-settlement change orders could not possibly have caused any new damage to Ludvik.

With regard to the first point, HDJV's October 1, 2019 letter lists all of its reasons for denying Ludvik's Pass-Through Claims. *See* Ex. B.  Indeed, that letter lists eight distinct reasons for denying Ludvik's Pass-Through Claims, each of which is supported by a separate numbered paragraph. Not a single one of those paragraphs even references the boilerplate language, let alone relies upon it as an actual basis for denying the Pass-Through Claims.  Thus, to the extent Ludvik now tries to cobble together some after-the-fact argument based upon the boilerplate language, Ludvik would merely be retroactively manufacturing a dispute that never actually existed.

Regardless, it would be nonsensical for Ludvik to argue the boilerplate in the post-settlement change orders somehow effectuated a new "waiver" of its Pass-Through Claims. The boilerplate is included in *all* change orders—including the ones Vanderlande signed *before* the parties' settlement. Thus, to the extent the boilerplate did somehow "waive" Ludvik's Pass-Through Claims (despite HDJV itself never taking that position), such a hypothetical waiver would necessarily have happened long before the parties' settlement as a result of any of the numerous pre-settlement change orders.[7]  Accordingly, because Ludvik necessarily has no damages stemming from Vanderlande execution of the innocuous post-settlement change orders, its "breach of contract" claim fails to the extent it is premised on those change orders. *Eleopulos v. McFarland*

---

[7] For example, Change Order 26—*i.e.*, the one Ludvik focuses on in its Amended Complaint—is a pre-settlement change order, which contains the boilerplate paragraph. *See* Ex. M. If the boilerplate in Change Order 26 somehow "waived" Ludvik's Pass-Through Claims, then those claims were extinguished—Vanderlande could not thereafter further extinguish those claims by signing additional change orders with the same boilerplate.

*& Hullinger, LLC*, 2006 UT App 352, ¶ 10, 145 P.3d 1157, 1159 ("A breach of contract claim requires four essential elements of proof, one of which is damages.").

Whether the boilerplate language generally had any impact on the Pass-Through Claims or not, the boilerplate language specifically contained in the post-settlement change orders could not possibly have caused any new damage to Ludvik.

> **c.  Ludvik's "breach of contract" claim is barred because, by the time of that settlement, Ludvik had already released its own Pass-Through Claims *and* agreed to indemnify HDJV against those same claims.**

Ludvik's corporate representative recently testified at deposition that Vanderlande "breached" the parties' Settlement Agreement by entering into the Vanderlande-HDJV Settlement, which *followed* the Ludvik-HDJV Settlement.  *See* Ex. D, Ludvik30(b)(6) Dep. at 97:21-98:10.

As an initial matter, Ludvik did not allege in its Amended Complaint any breach of the Settlement Agreement based upon Vanderlande entering into a settlement agreement with HDJV, and therefore, it is not a proper basis for Ludvik's breach of contract claim. Regardless, this new Ludvik argument is frivolous for the simple reason that, at the time of the Vanderlande-HDJV Settlement, Ludvik had already expressly released its own Pass-Through Claims against HDJV *and* agreed to indemnify HDJV against those claims. *See* Ex. K, Ludvik-HDJV Settlement at §§ 6.b and 9. With regard to the release, the Ludvik-HDJV Settlement provides as follows:

> In considering of the making of this Settlement . . . **Ludvik [and related parties] mutually release . . . Owner and HDJV [together with related parties] from** any and all disputes, claims, demand, claims of subrogation, contribution, or indemnity, damages of any kind whatsoever related to or concerning the Project, HDJV-Ludvik Subcontract, the Vanderlande-Ludvik Subcontract, the Ludvik Claims, and/or **the BHS Pass-Through Claim**.

*Id.* at § 6(b) (emphasis added). This release could not be any clearer; it *expressly* states the Ludvik release applies to the Pass-Through Claims. Further, in addition to releasing its Pass-Through Claim against HDJV, Ludvik also agreed to *indemnify* HDJV against those claims:

> In the event that Vanderlande asserts a pass-through claim arising from or related to Ludvik's work, then **Ludvik agrees to indemnify, defend, and hold harmless HDJV and the Owner from any such pass-through claim**, including losses, damages, and expenses (including but not limited to reasonable attorneys' fees and costs, and HDJV's and the Owner's reasonable costs associated with the defense of such claims).

*Id.* at § 9 (emphasis added). Taken together, these two provisions are unambiguous: Ludvik voluntarily relinquished any value its Pass-Through Claims might have had against HDJV—in exchange, of course, for payment of $24 million. *Id.* at § 3.

To clarify, the relevant sequence of events is as follows:

(1) On August 24, 2020, Vanderlande and Ludvik executed their Settlement Agreement, *See* Ex. A, Settlement Agreement;

(2) On December 8, 2020, Ludvik entered into the Ludvik-HDJV Settlement, in which it agreed to release its Pass-Through Claims against HDJV—and indemnify HDJV against those claims—in exchange for payment of $24 million. *See* Ex. K, Ludvik-HDJV Settlement Agreement.

(3) Prior to settling with HDJV, Vanderlande obtained a copy of the Ludvik-HDJV Settlement, and verified that Ludvik had, in fact, disposed of its Pass-Through Claims as described above. *See* Ex. E, Alewelt Aff. ¶ 28.

(4) On March 5, 2020—*after* receiving confirmation that Ludvik had already disposed of its Pass-Through Claims—Vanderlande entered into the Vanderlande-HDJV

Settlement, which necessarily did not damage Ludvik in any manner. *See* Ex. E, Alewelt Aff. ¶ 29; Ex. O, Vanderlande-HDJV Settlement.

In short, at the time of the Vanderlande-HDJV Settlement, Ludvik had already voluntarily given up its Pass-Through Claims against HDJV. Thus, to the extent Ludvik's "breach of contract" claim is based upon the Vanderlande-HDJV Settlement, it fails for lack of damages (among many other reasons). *Eleopulos*, 2006 UT App 352, ¶ 10 ("A breach of contract claim requires four essential elements of proof, one of which is damages.").

## C. LUDVIK'S "BREACH OF GOOD FAITH AND FAIR DEALING" CLAIM (COUNT V) SHOULD BE DISSMISED BECAUSE IT FAILS AS A MATTER OF LAW AND UNDISPUTED FACT.

"Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991). The Utah Supreme Court, however, has clarified that "[a] claim for breach of the covenant of good faith and fair dealing is a derivative of the breach of contract claim." *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 19, 342 P.3d 224, 231. Thus, where a plaintiff fails to "allege the existence of facts required to plead a breach of contract, it has also failed to plead a breach of the covenant of good faith and fair dealing." *Id.*; *see also Milestone Elec., Inc. v. Nice Incontact, Inc.*, No. 2:20-CV-00630, 2021 WL 2474095, at *3 (D. Utah June 17, 2021) ("When a party does not allege the existence of facts required to plead a breach of contract, it also fails to plead a breach of the covenant of good faith and fair dealing.).

First, the portion of Ludvik's "breach of good faith and fair dealing" claim at issue[8] fails for the simple reason that Ludvik has failed to allege a corresponding breach-of-contract claim, as explained in the preceding section. That is, because Ludvik's "breach of good faith" claim is derivative its breach-of-contract claim, it fails for the same reasons discussed above.

Second, Ludvik has failed to establish that Vanderlande did anything "intentionally or purposely" to destroy Ludvik's right to receive the "fruits" of the Settlement Agreement. Indeed, the only thing Ludvik has even alleged is that Vanderlande signed a handful of unrelated, post-Settlement Agreement that do not even reference the alleged "waiver" language or Change Order Log at issue. Indeed, HDJV itself never even asserted a defense based upon those post-settlement change orders. Vanderlande certainly did not sign the post-settlement change orders with the "intent" or "purpose" to harm Ludvik, and Vanderlande maintains those change orders did not, in fact, harm Ludvik. The actual undisputed evidence provides that, to the extent Ludvik was denied the "fruits" of the Settlement Agreement, that was because Ludvik decided to release its own Pass-Through Claims against HDJV—and indemnify HDJV against those claims—in exchange for payment of $24 million.

## **CONCLUSION**

WHEREFORE, for each and every of the foregoing reasons, Defendant Vanderlande respectfully requests that the Court enter an order granting: (1) judgment as a matter of law in Vanderlande's favor as to Count II ("negligent misrepresentation") of the Amended Complaint in its entirety; and (2) judgment as a matter of law in Vanderlande's favor as to the portions of Counts

---

[8] Vanderlande does not seek summary judgment on the portion of this claim seeking payment for claimed "retainage."

IV ("breach of contract") and V ("breach of good faith and fair dealing") of the Amended

Complaint seeking recovery of Ludvik's Pass-Through Claims.

   Respectfully submitted this 17th day of April, 2023,

        /s/ *Gina M. Vitiello*
        Gina M. Vitiello (*pro hac vice*)
        John C. Guin (*pro hac vice*)
        Jonathan C. Williams
        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court, District Court of Utah by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Mark O. Morris
Tyson J. Prisbrey
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, UT 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1900
mmorris@swlaw.com
tprisbrey@swlaw.com

Joel D. Heusinger
Kory D. George
WOODS AITKEN LLP
8055 East Tufts Avenue, Suite 525
Denver, Colorado 80237
Telephone: 303-606-6700
jheusinger@woodsaitken.com
kgeorge@aitken.com

DATED: April 17, 2023.

30784779.v1