Mark O. Morris (UT 4636)
Tyson J. Prisbrey (UT 17428)
**SNELL & WILMER L.L.P.**
15 West South Temple – Suite 1200
Salt Lake City, Utah 84101
Telephone: (801) 257.1900
Email: mmorris@swlaw.com
        tprisbrey@swlaw.com

Joel D. Heusinger (CO 40866) (admitted *pro hac vice*)
Kory D. George (CO 41058 (admitted *pro hac vice*)
**WOODS | AITKEN LLP**
790 East Union Ave., Suite 700
Denver, Colorado 80237
Telephone: (303) 606-6700
Email: jheusinger@woodsaitken.com
        kgeorge@woodsaitken.com

*Attorneys for Plaintiff Ludvik Electric Co.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **LUDVIK ELECTRIC CO.**, a Colorado corporation, | **PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (PARTIAL) (DKT. 64)** |
| Plaintiff, | |
| v. | Case No.: 2:21-cv-00462 |
| **VANDERLANDE INDUSTRIES INC.**, a Delaware corporation; | District Judge David Barlow |
| Defendant. | Magistrate Judge Cecilia M. Romero |

Pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure, as well as DUCivR 7-1(a) and 56-1(c), Plaintiff Ludvik Electric Co. ("**Ludvik**"), by and through its counsel of record, hereby opposes the *Motion for Summary Judgment (Partial)* (Dkt. 64) (the "**Motion**") filed by Defendant Vanderlande Industries, Inc. ("**VI**").

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

RESPONSE TO VI'S STATEMENT OF UNDISPUTED MATERIAL FACTS ....................... 3

STATEMENT OF ADDITIONAL MATERIAL FACTS............................................................ 8

    I.    THE PASS-THROUGH CLAIMS ........................................................ 8

    II.    PURSUIT OF THE PASS-THROUGH CLAIMS ................................. 9

    III.    LUDVIK RECEIVES VI'S CHANGE ORDERS WITH HDJV *AS PART OF THE MEDIATION PROCESS.* ....................................... 12

    IV.    THE LUDVIK/VI MEDIATION AND SETTLEMENT AGREEMENT. ......... 13

    V.    THE HDJV MEDIATION .................................................................. 16

    VI.    VI WAIVED PASS-THROUGH CLAIMS *AFTER* THE HDJV MEDIATION ...................................................................................... 17

ARGUMENT .............................................................................................................. 18

    I.    SUMMARY JUDGMENT IS NOT APPROPRIATE AS TO LUDVIK'S CLAIM FOR NEGLIGENT MISREPRESENTATION. .................................... 18

        A.    The Mediation Act Does Not Bar the Negligent Misrepresentation Claim. ........................................................................................ 19

        B.    The Economic Loss Rule Does Not Bar the Negligent Misrepresentation Claim. ................................................................ 22

        C.    VI's Various Arguments Specific to the Omissions Fail. ................ 26

        D.    The Merger Clause, Non-Reliance Clause, and Mutual Release Do Not Bar Ludvik's Negligent Misrepresentation Claim. ................ 31

    II.    PARTIAL SUMMARY JUDGMENT IS INAPPROPRIATE AS TO LUDVIK'S CLAIM FOR BREACH OF CONTRACT. ..................................... 34

        A.    VI's Execution of Post-Settlement Change Orders Support a Claim for Breach of Contract. ........................................................... 34

        B.    VI's Execution of the VI-HDJV Settlement Also Supports a Claim for Breach of Contract. ........................................................... 35

    III.    SUMMARY JUDGMENT IS INAPPROPRIATE ALSO AS TO LUDVIK'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING. ........................................................................................ 35

CONCLUSION ........................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abramson v. Affinity Fed. Credit Union*,
    No. 20-CV-13104, 2021 WL 3885325, 2021 U.S. Dist. LEXIS 165244, *17 (D.N.J.
    Aug. 31, 2021) ................................................................................................................. 37

*Addiction Treatment Ctrs., Inc. v. Shadow Mt., LLC*,
    No. 2:16-CV-339, 2020 WL 2543238, 2020 U.S. Dist. LEXIS 88110, *26 (D. Utah
    May 19, 2020) ................................................................................................................. 36

*Berenda v. Langford*,
    914 P.2d 45 (Utah 1996) ................................................................................................ 27

*Blakely v. USAA Cas. Ins. Co.*,
    500 Fed. Appx. 734 (10th Cir. 2012) ......................................................................... 36, 39

*Bonding Co. v. First Am. Title Ins. Agency of Utah, Inc.*,
    No. 2:06-CV-413, 2008 U.S. Dist. LEXIS 63038 (D. Utah Aug. 18, 2008) ......................... 28

*Chinitz v. Ally Bank*,
    No. 2:19-cv-00059, 2020 U.S. Dist. LEXIS 61792 (D. Utah Apr. 7, 2020) ......................... 25

*Classic Air Care, LLC v. Aetna Life Ins. Co.*,
    No. 2:20-CV-506, 2021 WL 199286, 2021 U.S. Dist. LEXIS 11366, *22 (D. Utah
    Jan. 19, 2021) ................................................................................................................. 37

*Direct Benefits, LLC v. TAC Fin. Inc.*,
    No. 13-CV-1185; 2014 U.S. Dist. LEXIS 20941 (D. Md. Feb. 20, 2014) ............................ 32

*Doublevision Entm't, LLC v. Navigators Specialty Ins. Co.*,
    No. 14-CV-02848, 2015 WL 370111, 2015 U.S. Dist. LEXIS 10425, *5 (N.D. Cal.
    Jan, 28, 2015) ................................................................................................................. 20

*EDSA/Cloward, L.L.C. v. Klibanoff*,
    2005 UT App 367, 122 P.3d 646 ................................................................................... 27

*Elder v. Clawson*,
    384 P.2d 802 (Utah 1963) ................................................................................................ 29

*Ennis v. Alder Prot. Holdings, LLC*,
    No. 2:19-CV-512, 2021WL 4097852021, U.S. Dist. LEXIS 22734 (D. Utah Feb. 5,
    2021) ............................................................................................................................... 23

*FDIC v. Floridian Title Group, Inc.*,
    972 F. Supp. 2d 1289 (S.D. Fla. 2013) ............................................................................ 22

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
    786 P.2d 1326 (Utah 1990) ......................................................................................... 28, 29

*Hart v. Larson*,
    No. 3:16-cv-01460, 2018 U.S. Dist. LEXIS 144628 (S.D. Cal. Aug. 24, 2018) ................... 20

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*,
    2018 UT 61, 435 P.3d 193 ............................................................................................. 22

*In re Archibald*,
    482 B.R. 378 (Bankr. D. Utah 2012) ............................................................................... 29

*In re Perkins*,
    298 B.R 778 (Bankr. D. Utah 2003) ............................................................................... 29

*Jensen*,
    2020 UT App 124 ........................................................................................... 29
*KTM Health Care Inc. v. SG Nursing Home LLC*,
    2018 UT App 152, 436 P.3d 151 .................................................................. 23
*Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*,
    No. 11-CV-01036, 2017 WL 282583, 2017 U.S. Dist. LEXIS 9200, *15 ............. 20
*Luna v. Luna*,
    2020 UT 63, 474 P.3d 966 ........................................................................... 18
*Mitchell v. Christensen*,
    2001 UT 80, 31 P.3d 572 ............................................................................. 29
*Mitchell v. Wells Fargo Bank*,
    355 F. Supp. 3d 1136 (D. Utah 2018) .................................................... 28, 29
*Monahan v. Univ. of Utah*,
    No. 2:03-CV-34, 2005 WL 8176569, 2005 U.S. Dist. LEXIS 55595, *68 (D. Utah
    Apr. 7, 2005) ............................................................................................. 38
*Oman v. Davis Sch. Dist.*,
    2008 UT 70, 194 P.3d 956 (Utah 2008) ....................................................... 36
*Paskenta Enters. Corp. v. Cottle*,
    No. 1:17-CV-33, 2018 WL 522322, 2018 U.S. Dist. LEXIS 10692, *11 (D. Utah
    Jan. 22, 2018) ........................................................................................... 32
*Perenco Nigeria Ltd. v. Ashland Inc.*,
    242 F.3d 299 (5th Cir. 2001) ....................................................................... 22
*Perez v. Indian Harbor Ins. Co.*,
    613 F. Supp. 3d 1171 (N.D. Cal. 2020) ........................................................ 20
*Peters v. Weatherwax*,
    731 P.2d 157 (Haw. 1987) ........................................................................... 35
*Powderham v. Synergy Worldwide, Inc.*,
    No. 2:08-CV-548, 2010 WL 988494, 2010 U.S. Dist. LEXIS 23966, *25 (D. Utah
    Mar. 12, 2010) .......................................................................................... 37
*Preventive Energy Solutions, LLC v. NCAP Ventures 5 LLC*,
    No. 2:16-CV-809, 2017 WL 87028, 2017 U.S. Dist. LEXIS 4195, *9 (D. Utah Jan.
    10, 2017) ....................................................................................... 24, 31, 32
*Reperex, Inc. v. Coldwell Banker*,
    Commer., 2018 UT 51, 428 P.3d 1082 ......................................................... 32
*Sandoval v. State Farm Mut. Auto. Ins. Co.*,
    No. 1:21-CV-171, 2022 WL 2257242 ............................................................ 37
*Shree Ganesh, LLC v. Weston Logan, Inc.*,
    2021 UT 21, 491 P.3d 885 ........................................................................... 30
*Taylor v. Smith, Barney & Co.*,
    358 F. Supp. 892 (D. Utah 1973) ......................................................... 19, 28
*TL of Fla., Inc. v. Terex Corp.*,
    No. 13-CV-2009, 2015 WL 5618893, 2015 U.S. Dist. LEXIS 128152, *14 (D. Del.
    Sept. 24, 2015) .......................................................................................... 32

*Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*,
    839 F.3d 1251 (10th Cir. 2016) ........................................................................ 18
*Velazquez v. Greyhound Lines, Inc.*,
    No. 2:19-cv-00493, 2020 U.S. Dist. LEXIS 268338 (D. Utah Aug. 18, 2020) ...................... 18
*Velocity Press v. Key Bank, NA*,
    570 Fed. Appx. 783 (10th Cir. 2014) ........................................................... 36, 38, 39
*Young Living Essential Oils, LC v. Marin*,
    2011 UT 64, 266 P.3d 814 ............................................................................. 36

## Statutes

Utah Code Ann. § 78B-10-102(2) ....................................................................... 20
Utah Code Ann. § 78B-10-105 ............................................................................ 7
Utah Code Ann. § 78B-10-106(1)(a) ................................................................... 21

## Rules

Federal Rules of Civil Procedure Rule 56 ............................................................. 1
Federal Rules of Civil Procedure Rule 7 .............................................................. 1

## Other Authorities

DUCivR 7-1(a) and 56-1(c) .............................................................................. 1
Restatement (Second) of Torts § 551 ............................................................. 29, 30

## **INTRODUCTION**

This Court should deny the Motion because there are genuine issues of material fact, and VI is not entitled to judgment as a matter of law.[1] The Utah Uniform Mediation Act does not bar Ludvik's entire negligent misrepresentation claim. In suggesting that, VI selectively focused on off-hand remarks in a deposition rather than by focusing on Ludvik's Amended Complaint. Ludvik's current claim is not based on affirmative misrepresentations made during a mediation. Rather, the claim is based on omissions—or statements VI should have made concerning its having waived the Pass-Through Claims—as well as language in the MOU and Settlement Agreement, none of which are privileged mediation communications.

Second, the economic loss rule does not apply to Ludvik's negligent misrepresentation claim because the duties arising in tort, and the contractual duties at issue here do not completely overlap. VI's omissions concerning the unviability of the Pass-Through Claims cannot constitute a breach of contract because a contract cannot be breached before it exists. VI could not have breached the Settlement Agreement when it failed to inform Ludvik that it had waived the Pass-Through Claims during settlement negotiations that preceded, by months, the final contract. And, VI owed a separate duty to disclose that the Pass-Through Claims had been waived—which duty arose because it knew Ludvik's willingness to enter into the Settlement Agreement was premised on the viability of the Pass-Through Claims—not on the Settlement Agreement. Finally, the misrepresentation claim arises from the omissions as well as from the language in the Settlement Agreement that led Ludvik to believe that the Pass-Through Claims were viable. Because there were no express warranties in the MOU or the Settlement Agreement regarding the viability of

---

[1] All capitalized terms not otherwise defined herein carry the same definition assigned in the Motion.

the Pass-Through Claims, there are no contract claims and thus the claims do not completely overlap.

Third, disputed issues of material fact prevent summary judgment concerning VI's material omissions. VI claims that as a matter of law Ludvik was put on notice by the October 1 Letter (that VI waited over two months to share with Ludvik) that VI had waived the Pass-Through Claims. That, however, is an issue of fact for the jury to decide—and not this Court on summary judgment. Whether in all of the circumstances Ludvik was put on notice of the viability of the Pass-Through Claims with the October 1 Letter is an issue of fact.   There is also a dispute of fact as to whether Ludvik assumed facts, known by VI to be unfounded when it settled with VI, and agreed to accept a much lower amount in settlement to resolve all other claims between it and VI. Summary judgment is inappropriate for that reason as well.

Fourth, the merger clause, non-reliance clause, and mutual releases of the Settlement Agreement do not bar the misrepresentation claim as a matter of law. With respect to the merger and non-reliance clauses, Utah's jurisprudence is clear that VI cannot exclusively rely on these general provisions, without more, to defeat a negligent misrepresentation claim on summary judgment. Concerning the mutual release, VI selectively misquoted the provision, which expressly carved out claims relating to the Pass-Through Claims and VI's associated liability for failing to present them.

Fifth, the factual record supports Ludvik's breach of contract claim because a post-settlement change order completely foreclosed VI's ability to pursue the Pass-Through Claims, which VI promised to help Ludvik do in the Settlement Agreement. And Ludvik did not waive the Pass-Through Claims when it settled with HDVJ, *because it never owned those claims*.  As a

matter of law, only VI could have brought those claims whether for its own or for Ludvik's benefit, *and only VI could waive them*.

Lastly, summary judgment is inappropriate on Ludvik's claim for breach of the covenant of good faith and fair dealing. VI cannot rely on its conclusory argument that summary judgment is automatically appropriate if this Court were to grant any part of the Motion. Because VI is not seeking summary judgment on Ludvik's entire claim for breach of contract, Ludvik's claims regarding good faith and fair dealing do not necessarily depend on the outcome of the Motion. Even on the merits of the claim, one of the key "fruits" of the Settlement Agreement was Ludvik's right to seek monies owed on the Pass-Through Claims through VI. VI breached the covenant of good faith and fair dealing when it had destroyed Ludvik's right to do so, and continued to misrepresent the viability of the Pass-Through Claims to induce Ludvik into entering into the Settlement Agreement. Because the evidence demonstrates that a reasonable jury could determine that VI breached the covenant of good faith and fair dealing, this Court should deny summary judgment.

## RESPONSE TO VI'S STATEMENT OF UNDISPUTED MATERIAL FACTS

**VI'S STATEMENT OF FACT NO. 1[2]:** *The Project involved the construction of a new passenger terminal and the renovation of existing areas at the Salt Lake City International Airport. (See Ex. E, Affidavit of Doug Alewelt ("Alewelt Aff.") ¶¶ 3-5. HDJV was the Project's general contractor. Id. ¶ 3. HJDV subcontracted with Vanderlande to provide a new baggage handling system as part of the Project. Vanderlande, in turn, sub-subcontracted with Ludvik to perform the electrical and mechanical work necessary to install that baggage handling system. Id. 4. Ludvik, however, also had a direct subcontract with HDJV to perform the electrical work on the terminal renovation portion of the Project, which was unrelated to Vanderlande's baggage handling system (i.e., Ludvik was both a direct subcontractor and sub-subcontractor of HDJV). Id. 5. Ludvik began performance of its work on the baggage handling system in late 2017. Id. 6. Due to performance problems and its failure to maintain progress with the Project schedule, Ludvik did not perform all of the work within the scope of its subcontract. Id. at 7.*

---

[2] Though the Motion does not number VI's Statement of Undisputed Material Facts, Ludvik has referred to each paragraph therein as a separate number for ease of reference.

**RESPONSE:** Disputed. Ludvik incorporates by reference, as if fully set forth herein, its "Statement of Additional Material Facts" ("**SAMF**"), *infra*. Ludvik disputes that it did not perform all of the work within the scope of its subcontract due to performance problems. Ludvik's progress on the baggage handling system was materially delayed due to scheduling conflicts caused by, among others, HDJV. (SAMF ¶ 1.) For purposes of the Motion only, Ludvik does not dispute the remaining allegations in this paragraph.

**VI'S STATEMENT OF FACT NO. 2:** *Ludvik's Pass-Through Claims consist of its increased labor costs that it alleges arose from the compression of its schedule and acceleration of its work as a result of Project delays caused by HDJV. Id. 7. The first time Ludvik made Vanderlande aware of Ludvik's intent to submit a claim was in a January 8, 2019 email. Id. Because Ludvik claimed that HDJV and the owner were the cause of the schedule compression and acceleration that led to its added costs, Ludvik was only entitled to compensation for such costs to the extent that Vanderlande received compensation from HDJV/the owner. Id. at 9; see also, Dkt. No. 34-1, Vanderlande-Ludvik Subcontract at 11.2. Accordingly, Ludvik's claim had to meet certain contractual requirements as to form and content to be submitted to HDJV for consideration and approval. Id. at 10. Ludvik's purported "claim" failed to meet those requirements. Id.*

**RESPONSE:** Disputed. Ludvik disputes VI's subjective claim that Ludvik failed to meet the contractual requirements when submitting the Pass-Through Claims to VI. On April 26, 2019, Ludvik sent VI a formal change order request for the Pass-Through Claims, which included schedule and impact analysis from Sage Consulting ("**Sage**"). (Change Order Request, attached hereto as **Exhibit 1**.) VI emailed HDJV on May 21, 2019, informing HDJV of Ludvik's Change Order Request and stating that VI would continue to "seek further clarification and full supporting particulars" concerning the claims and that "Ludvik continues to insist that we submit it to HDJV." (May 21, 2019 E-mail, attached hereto as **Exhibit 2**.) On October 1, 2019, HDJV wrote to VI responding to the Pass-Through Claims. (Dkt. 65-2.) Therein HDJV provided its subjective and self-serving analysis of the information VI had supplied concerning the Pass-Through Claims and concluded that Ludvik was "not delayed or accelerated by actions of

HDJV." (*Id.* at 4.) Though HDJV discussed the form of the Change Order Request presenting the

Pass-Through Claims, HDJV did not reject the Pass-Through Claims due to lack of form or

content. (*Id.*) It is undisputed HDJV continued to invite and accept information.  For purposes of

the Motion, Ludvik does not dispute the remaining allegations in this paragraph.

**VI'S STATEMENT OF FACT NO. 3:** *Over the next several months, Vanderlande repeatedly advised Ludvik that its "claim" was deficient and did not meet the requirements to be submitted as a "claim" to HDJV. Id. at 11. Vanderlande asked Ludvik several times to include information to reasonably substantiate the cause of the impacts to its work and to support the costs being claimed from HDJV. Id. Ludvik updated its "claim" in February, May, and August 2019, but despite Vanderlande's repeated requests, Ludvik never modified its claim in the ways suggested by Vanderlande. Id. ¶ 12.*

**RESPONSE:** Disputed. Ludvik incorporates by reference, as if fully set forth herein, its

statements made in Response to No. 2, above.

**VI'S STATEMENT OF FACT NO. 4:** *While Vanderlande was advising Ludvik to substantiate its Pass-Through Claims in a way that was contractually compliant," Vanderlande was also keeping HDJV aware of the status of Ludvik's "claim" and providing copies of updates and revisions to Ludvik's "claim" to HDJV, despite the non-compliant nature of its contents. Id. ¶ 13. HDJV and Vanderlande continually discussed the need for Ludvik to provide additional information to support the cause and amounts being claimed for the "claim" to be considered on its merits by HDJV. Id.*

**RESPONSE:** Disputed. Ludvik incorporates by reference, as if fully set forth herein, its

statements made in Response to No. 2, above. Furthermore, Ludvik disputes that VI was keeping

HDJV aware of the status of the Pass-Through Claims, because in fact it was "actively

squelching" the Pass-Through Claims. (SAMF ¶ 6.)

**VI'S STATEMENT OF FACT NO. 9:** *On August 15, 2019, Vanderlande submitted an updated version of Ludvik's Pass-Through Claims to HDJV. See Ex. E ¶ 18. By letter dated October 1, 2019, HDJV denied Ludvik's "claim" and provided eight separate reasons in support of that denial, including Ludvik's continued failure to properly substantiate its claim in compliance "with the Subcontract change justification requirements." Id.; see also Ex. B at p. 2 ¶ 2.g.  HDJV also listed as a reason for rejection the fact that Vanderlande had not listed Ludvik's Pass-Through Claims on the Change Order Log. See Ex. B at p. 3, ¶ 6 (alleging that Ludvik's Pass-Through Claims are barred because they involve "changes not on the Change Order Log").*

**RESPONSE:** Disputed. Ludvik incorporates by reference, as if fully set forth herein, its statements made in Response to No. 2, above.

**VI'S STATEMENT OF FACT NO. 10:** *Vanderlande provided a copy of HDJV's October 1, 2019 denial letter to Ludvik on or about December 12, 2019. See Ex. E ¶ 20; Ex. I, December 18, 2019 letter from Ludvik's Donald Reinstein to Vanderlande's Alewelt. Ludvik's then-President Donald Reinstein sent Vanderlande a response to HDJV denial letter, but Mr. Reinstein never asked Vanderlande whether it had preserved Ludvik's Pass-Through Claims on a change order log, and never did anything to investigate whether Ludvik's Pass-Through Claims were on the Change Order Log. Id; see also Ex. J, Reinstein Dep. at 116:16-21; 117:14-118:4. In May 2020, Ludvik was provided copies of the Vanderlande-HDJV Change Orders, including Change Order 22 and 26 (without the referenced Change Order Logs attached). See Ex. E ¶ 21.*

**RESPONSE:** Disputed. Ludvik responds that it did not "investigate whether Ludvik's Pass-Through Claims were on the Change Order Log" because VI, after receiving the October 1 Letter and keeping it from Ludvik for over two months, maintained to Ludvik the possibility of continuing its pursuit of the Pass-Through Claims. (Jan. 15, 2020 Letter, attached hereto as **Exhibit 3**, at 2) ("If Ludvik has any of the requested supporting information or documentation, then Ludvik should forward that to [VI] immediately" and that VI was "open to meeting to resolve all open matters.").) In other words, VI gave Ludvik no reason to doubt that the Pass-Through Claims were still viable.

**OBJECTION:** Ludvik objects also to the statement that Ludvik received Change Order 26 in May of 2020. This Court has already ruled in favor of VI on the issue of precluding information shared in connection with mediations out of the record. VI previously successfully moved this Court to exclude various mediation communications from evidence as privileged under the Mediation Act. VI cannot now selectively use other, purportedly favorable mediation communications simply because it believes that particular evidence helps VI's case. To the extent that VI now seeks to introduce mediation communications, it has waived any privilege

under Utah Code Ann. § 78B-10-105 and this Court should now reconsider its prior ruling on this issue to allow all communications into the record, and reinstate Ludvik's claims that were dismissed.[3] To the extent this Court is unwilling to do so, this Court must apply the privilege fairly and bar all mediation communications, including the fact that as part of the mediation process VI shared partial copies of change orders.

For purposes of the Motion only, Ludvik does not dispute the remaining allegations in this paragraph.

**VI'S STATEMENT OF FACT NO. 16:** *In early 2021, Vanderlande was in the process of negotiating a final close-out of its work on the Project with HDJV. Prior to entering into a final settlement with HDJV, however, Vanderlande obtained a copy of the Ludvik-HDJV Settlement, and verified that Ludvik had, in fact, disposed of its Pass-Through Claims as described above. See Ex. E ¶ 28.*

**RESPONSE:** Disputed. Ludvik did not (and could not) release the Pass-Through Claims in the HDJV Settlement Agreement. At the HDJV Mediation, HDJV and the Owner advised VI and Ludvik that any pursuit of the Pass-Through Claims against them in light of VI's express waiver of those claims would run afoul of the federal False Claims Act. (SAMF ¶ 33.) As a result, and finally being provided with a complete copy of CO 26, Ludvik was forced to acknowledge that VI had eviscerated and completely released the Pass-Through Claims as against HDJV and the Owner. (*Id.* at ¶ 33.) HDJV and Ludvik memorialized their settlement in a settlement agreement executed on December 9, 2020 (the "**HDJV Settlement Agreement**") (Dkt. 65-11.) Because Ludvik's Pass-Through Claims could not be brought directly by Ludvik against HDJV by reason there was no contractual privity, there could be no practical or legal release of the Pass-Through Claims by Ludvik in the HDJV Settlement Agreement. (*Id.* at 3.) Of

---

[3] If this Court does allow consideration of this mediation communication, Ludvik reserves the right to seek Rule 54 reconsideration of the dismissals of some of its claims earlier in this case.

course, Ludvik was willing to include a waiver of any claims it did not have in order to effectuate its agreement with HDJV.

For purposes of the Motion only, Ludvik does not dispute the remaining allegations in this paragraph.

**VI'S STATEMENT OF FACT NO. 17:** *On March 5, 2021—after receiving confirmation that Ludvik had already resolved and released HDJV and the owner for its Pass-Through Claims—Vanderlande entered into a settlement with HDJV (the "Vanderlande-HDJV Settlement") for outstanding payments owed to Vanderlande for contract balance and open change order requests. See Ex. M, Vanderlande-HDJV Settlement Agreement. Vanderlande's settlement with HDJV did not include any payment for Ludvik's Pass- Through Claims. Id. ¶ 29.*

**RESPONSE:** Disputed. While the document speaks for itself, Ludvik disputes the factual and legal premise and incorporates by reference, as if fully set forth herein, its statements made in Response to No. 15, above.

<u>**STATEMENT OF ADDITIONAL MATERIAL FACTS**</u>

**I.    THE PASS-THROUGH CLAIMS**

1.      Ludvik experienced scheduling disruptions on the Project, some of which VI agreed were caused by and attributable to HDJV and/or the Owner. (Depo. of James Ludvik, as Ludvik 30(b)(6) witness ("**J. Ludvik Depo.**"), Dkt. 65-4, at 55:2-12 ("VI indicated—and we agreed with them—that it was an owner-caused…delay.").)

2.      As a result of these delays and subsequent changes in the schedule, Ludvik engaged its scheduling expert Sage Consulting early on in the Project to assist Ludvik with tracking new schedule issuances and their impact on labor productivity. (Decl. of James Ludvik ("**J. Ludvik Decl.**"), attached hereto as **Exhibit 4**.) Sage was also asked by Ludvik to perform several analyses of Ludvik's productivity on the BHS Project. (*Id.*). Sage produced many

versions of its report throughout this dispute, updating the report as requested by HDJV and VI. (September 3, 2020, Sage Report ("**Sage Report**"), attached hereto as **Exhibit 5**.)

3.     Throughout 2019, Ludvik timely presented VI with notices, the Sage Report, and claims for productivity impacts and changes, which VI in turn was supposed to submit to HDJV. (J. Ludvik Depo., Dkt. 65-4 at 89:6-14.) These claims involved some claims against VI, as well as claims that were to "pass-though" to HDJV and/or Owner (i.e., the "Pass-Through Claims"). In response, VI assured Ludvik that those claims were passed on, and that HDJV was reviewing and evaluating the Pass-Through Claims. (*Id.* at 84:8-24 ("VI had indicated to us that [HDJV] was reviewing the submission over multiple periods of time.").)

4.     Unbeknownst to Ludvik, however, VI was signing a series of change orders with HDJV for time extensions in exchange for zero-cost change orders that waived the Pass-Through (*Id.* at 91:19-23 (testifying that he was surprised to learn that VI "was signing change orders agreeing to … zero cost changes [in exchange for] updated schedules" and Ludvik was not aware that VI failed to include the Pass-Through Claims on the change order logs for those change order that would have exempted them from waiver).)

5.     CO 26, executed on December 3, 2019, settled all outstanding claims that arose prior to June 1, 2019, except for those listed in the Change Order Log attached to CO 26. (Dkt. 65-13). There is no dispute the Pass-Through Claims were *not* listed on the Change Order Log. (*Id.*; *see also* Change Order Log, attached hereto as **Exhibit 6.**)

## II.     PURSUIT OF THE PASS-THROUGH CLAIMS

6.     VI was not supportive of Ludvik's pursuit of the Pass-Through Claims, at least initially. On February 4, 2019, after receiving multiple notices of Ludvik's damages resulting from changes in sequencing of work and schedules, VI sent an email to HDJV, stating:

> We wanted to notify you of recent conversations we have had with Ludvik and correspondence between us. ***Vanderlande has been actively squelching Ludvik claims.*** However, we now expect to receive a claim from Ludvik on or before 11Feb19. The full extent of that claim will become apparent after submittal by Ludvik with full supporting details. However we find it necessary to advise you that the claim will be likely be [sic] linked to events on site and changes in the HDJV schedule.

(Feb. 4, 2019 E-mail, attached hereto as **Exhibit 7** (emphasis added).)

7.      On February 12, 2019, Ludvik sent VI a letter outlining its claim for damages as a result of scheduling disruptions to the BHS Project. (Feb. 12, 2019 Letter, attached hereto as **Exhibit 8**.)

8.      In response, VI emailed Lewis on February 18, 2019, stating that, "despite [VI's] resistance to accepting Ludvik's claim," VI, at that point, anticipated that there would likely be "some degree of substance to Ludvik's claims."   (Feb. 18, 2019 E-mail, attached hereto as **Exhibit 9**.)

9.      On April 26, 2019, Ludvik sent VI a formal change order request for the Pass-Through Claims, which included schedule and impact analysis from Sage. (Change Order Request, Exh. 1.)

10.     Following a series of communications between VI and HDJV, and VI and Ludvik, on October 1, 2019, HDJV wrote to VI (and not to Ludvik) responding to the Pass-Through Claims. (Dkt. 65-2.) In that letter, HDJV provided its subjective analysis of the information VI had supplied concerning the Pass-Through Claims and, in closing, claimed that Ludvik was "not delayed or accelerated by actions of HDJV." (*Id.* at 4.)

11.     The October 1 Letter claimed to VI (again, not to Ludvik) that HDJV had adopted the position that the Pass-Through Claims had been waived  (*Id.* ("Both of these letters established cut-off points for any change request consideration by HDJV…. The proposed

change/claim is time barred as stated in 2.b. above as well as by the two letters noted above…”); *see also* Depo. of David O'Haren (HDJV's designee), attached hereto as **Exhibit 10**, at 66:6-13 ("Q: As of October 1st, 2019, was it [HDJV's] position that [VI] had waived Ludvik's claims by signing any change orders? A: I believe that it was our position, as stated in the [October 1 Letter], that there were time frames drawn in the sand and the change orders and that cost, prior to that date, had been resolved and, thus, waived.").)  In other words, VI's change orders, and not any action or inaction by Ludvik, effected the waivers.

12.     A few days later, on October 7, 2019, without sharing a copy of the letter itself, VI notified Ludvik of HDJV's rejection, *so far*, of the Pass-Through Claims. (Oct. 7, 2019 Letter, attached hereto as **Exhibit 11**.) Most importantly, however, VI failed also to mention HDJV's position that the Pass-Through Claims were barred. (*Id.*) Contrary to what VI now claims the October 1 letter to mean, VI nevertheless communicated at that time to Ludvik the possibility of pursuing the Pass-Through Claims, stating that "[i]f Ludvik has any of the requested supporting information or documentation, then Ludvik should forward that to [VI] immediately" and that VI was "open to meeting to resolve all open matters." (*Id.* at 2.)

13.     On December 3, 2019, VI and HDJV executed CO 26, which was a zero-cost change order that waived all claims between the two parties that were not listed on the change order log. (Dkt. 65-13). The Pass-Through Claims were not listed on the Change Order Log of CO 26 and thus VI had waived the Pass-Through Claims. (*Id.*; *see also* Change Order Log, Exh. 6.)

14.     Nine days later on December 12, 2020, and months after receiving it, VI finally sent Ludvik a copy of the October 1 Letter in which HDJV had stated that it thought Ludvik's

claims on the BHS Project were time barred. Ludvik, however, had no knowledge of any waiver, had never seen a change order executed by VI, and reasonably assumed that VI included the Pass-Through Claims on any Change Order Log to exempt them from any waivers, because Ludvik timely submitted its Pass-Through Claims to VI. (J. Ludvik Depo., Dkt. 65-4, at 88:17-89:13; *id.* at 94:22-95:11 ("The change order log was part of the contractual relationship. We submitted them on a regular basis…. We had no contract privity between [HDJV] and VI. Did not know what they were doing between each other."); *Id.* at 142:21-143:7 (testifying that Ludvik had no doubt that VI was including the Pass-Through Claims on the change order logs because VI "had a contractual requirement to deal with the contract according to all the rules of the contract, and they had a duty to pass everything through. They were not the end decision-maker on any changes. They had to pass them through.").)

### III.   LUDVIK RECEIVES VI'S CHANGE ORDERS WITH HDJV *AS PART OF THE MEDIATION PROCESS*.

15.    In an effort to resolve claims between the two of them, Ludvik and VI scheduled a mediation in Atlanta, Georgia to occur in June 2020 (the "**Mediation**"). As part of that mediation process, the parties exchanged documents just prior to the Mediation to facilitate mediation. (Depo. of Joel Heusinger ("**J. Heusinger Depo.**"), attached hereto as **Exhibit 12**, at 84:21-85:6.)

16.    On May 27, 2020, a couple weeks before the mediation, counsel for VI provided certain (but incomplete) change order information between VI and HDJV to counsel for Ludvik. (*Id.*) More specifically, the change order information included only portions of CO 26, which provided, among other things, waiver language that *excepted* from waiver "proposals that have been submitted, are currently under HDJV or Owner review, and will be incorporated into the Subcontract once approved." (Dkt. 65-13.) CO 26 referenced the Change Order Log (Exh. 6) that

VI chose *not* to provide then and never provided to Ludvik. (J. Heusinger Depo., Exh. 12, at 84:21-85:6.)

17.     At the time VI produced a partial copy of the CO 26, VI failed to disclose that the Pass-Through Claims were ***not*** on the Change Order Log and thus were waived.  Thus Ludvik reasonably believed at the time of the Mediation that its Pass-Through Claims were neither waived nor released. (J. Ludvik Depo., Dkt. 65-4, at 110:22-112:19 ("Prior to mediation, [Ludvik] had multiple meetings, both in person and by phone with VI personnel outlining the issues that were going on. VI communicated to [Ludvik] verbally and in writing that they had submitted our claim and that it was valid and that the feedback from HD[JV] is it needed more detail. Each time that we got a request for more detail, we provided the detail that was requested.").)

## IV.     THE LUDVIK/VI MEDIATION AND SETTLEMENT AGREEMENT.

18.     In June 2020, VI and Ludvik attended the Mediation to resolve all of the claims between them that had accrued by that time. During and after the Mediation, Ludvik continued to do work under its Subcontract with VI. (J. Ludvik Decl., Exh. **4**.)

19.     Both parties understood at the Mediation, and at all times, that Ludvik intended to assert the Pass-Through Claims directly against VI unless VI settled them at the Mediation as well. (*Id.*)

20.     During the course of the Mediation, it became apparent that VI was not willing to pay monies to settle the Pass-Through Claims. It did indicate through the mediator that it was willing to pay monies to settle the other claims between them on terms that, importantly, presumed and expressly contemplated the continued viability of the Pass-Through Claims. (*Id.*)

21.     At no time during the Mediation did VI, through the mediator or otherwise, suggest that it had done anything to prejudice or diminish the value of the Pass-Through Claims. (*Id.*)

22.     Rather, VI affirmatively stated that the Pass-Through Claims had not been waived, released or diminished. (J. Ludvik Depo., Dkt. 65-4, at 72:24-73:1 ("We were led to believe that they had not waived our claim and that they were going to be passed through to Holder."); *id*. at 15:17-16:7 ("[Doug Alewelt] said repeatedly that the claim was alive. Because that was a main concern, otherwise, why would we make the settlement that we settled?"); *see also* J. Ludvik Decl., Exh. **4**)

23.     Further, at no time during the Mediation did VI provide a complete copy of, or disclose the contents of, the Change Order Log referenced in CO 26. (*Id.*; *see also* Exh. 6.)

24.     In reliance upon the express intention of VI to assist in and participate in the recovery from VI's prosecution of the Pass-Through Claims, upon VI's representation that the Pass-Through Claims had not been waived and upon assumptions premised by VI's failure to disclose all material information, Ludvik agreed to accept a much lower amount in settlement to resolve all non-Pass Through Claims between Ludvik and VI. (J. Ludvik Decl., Exh. **4**)

25.     At the conclusion of the Mediation, on June 12, 2020, Ludvik and VI entered into a Memorandum of Understanding Agreement (the "**MOU**"). (MOU, attached hereto as **Exhibit 13**.) The MOU expressly excepted from settlement "Ludvik's pass through claims to HD. . . ." (*Id.*) VI also expressly promised Ludvik in the MOU that it would "provide reasonable support and cooperation through the claims process." (*Id.*) VI further implicitly warranted to Ludvik the enforceability and value of the Pass-Through Claims by reserving to itself, as part of the

settlement, "the next $1.0 million (one million) of the recovery" from the Pass-Through Claims beyond the reasonable hourly fees and costs to pursue those claims. (*Id.*)

26.     The Parties then agreed to and executed the final Settlement Agreement on or about August 24, 2020 (Dkt. 65-1.) Among the terms in the Settlement Agreement to which VI agreed, by which VI continued to induce and lead Ludvik to believe that VI had done nothing to prejudice or devalue the Pass-Through Claims, are the following:

a.     "VI and LE agreed that a portion of the LE Claims may be the ultimate responsibility of HDJV and should be passed through to HDJV . . . ." (*Id.* at 1);

b.     "VI agrees to take reasonable steps necessary to support the Pass-Through Claims against HDJV." (*Id.* at 2);

c.     "LE shall have sole authority to accept or reject any settlement offers from or on behalf of HDJV or any other source regarding the Pass-Through Claims and will be responsible to preparing the Pass-Through Claims and for presentation of the same to HDJV in the name of VI in any mediation, negotiation, arbitration, or litigation." (*Id.*);

d.     "[N]o release contained herein results in a release of HDJV of any Pass-Through Claims." (*Id.* at 3);

e.     "This Agreement and this release is not intended and should not be interpreted to act as a release of HDJV of any Pass-Through Claims." (*Id.*);

f.     "Upon such payment by VI to LE of any award, judgment and/or settlement paid by or on behalf of HDJV to VI for the Pass-Through Claims, if any, VI shall be finally and fully released and discharged by LE with regard to the Pass-Through Claims." (*Id.*);

g.     "VI party [*sic*] agrees to reasonably cooperate with LE regarding the pursuit of the Pass-Through Claims." (*Id.* at 5); and

h.     Of monies collected on the Pass-Through Claims after collection of fees and costs, the "next million dollars ($1,000,000) of proceeds" were to go to VI. (*Id.* at 6).

27.     Importantly, and of course misleadingly, VI contractually promised its cooperation to pursue the Pass-Through Claims that it had waived without ever telling Ludvik it

had done so. VI's express covenants, representations, and omissions of material information to the contrary, that the Pass-Through Claims had not been waived and that VI had done nothing to prejudice those claims, created a reasonable belief in and induced Ludvik to agree to the Settlement Agreement. (*Id.*)

28.     On November 5, 2020, six weeks after the Settlement Agreement was signed, VI directed correspondence to HDJV in response to inquiries that HDJV had made concerning claims belonging to Ludvik, that VI and Ludvik had achieved a settlement between themselves, "except the acceleration and labor productivity loss claim against HDJV. . . ." (Nov. 5, 2020 Letter, attached hereto as **Exhibit 14**, at 2.)

29.     VI went on to state to HDJV that "[t]he settlement preserved any claims that Ludvik could prove against HDJV. . . . To that end, the settlement agreement preserved Ludvik's right to present a claim through [VI] to HDJV." (*Id.*)

## V.     THE HDJV MEDIATION

30.     Fully expecting that the Pass-Through Claims were intact, Ludvik attended the HDJV Mediation in December, 2020, with VI, HDJV, and the Owner to mediate the Pass-Through Claims, among other direct claims that Ludvik had against the Owner and/or HDJV.

31.     During the course of the HDJV Mediation, Ludvik learned for the first time (from HDJV and not from VI) that the Pass-Through Claims were apparently ***not*** on the CO 26 Change Order Log that VI failed to disclose to Ludvik, and that HDJV deemed this in conjunction with other language in CO 26 to be an affirmative waiver by VI of Ludvik's Pass-Through Claims. (J. Heusinger Depo., Exh. 12, at 75:19-76:4 (testifying that the HDJV mediation was the "first time we understood HD[JV] to say VI had waived its claims against HD[JV] and that prevented Ludvik's impact claims from being addressed").)

32.     Due to VI's conduct, by the time of the HDJV Mediation, there were no longer any viable Pass-Through Claims that Ludvik could pursue against HDJV through VI, depriving Ludvik of its Pass-Through Claims. (*Id.*)

33.     At the HDJV Mediation, HDJV and the Owner advised VI and Ludvik that any pursuit of the Pass-Through Claims against them could come with the risk of submitting a false and/or fraudulent claim in violation of the federal False Claim Act by reason of VI's waiver of all such claims. (J. Ludvik Depo., Dkt. 65-4, at 102:11-14 (testifying that HDJV told Ludvik that "if there was any pursuit [of the Pass-Through Claims] they would retaliate with a false claim suit").)

34.     As a result, Ludvik was forced to acknowledge that VI had eviscerated and completely released the Pass-Through Claims as against HDJV and the Owner in connection with the settlement reached in the HDJV Mediation, and Ludvik accepted a much less favorable settlement with HDJV than it would have if VI had preserved, rather than waived the Pass-Through Claims. (J. Ludvik Decl., Exh. **4**.)

## VI.     VI WAIVED PASS-THROUGH CLAIMS *AFTER* THE HDJV MEDIATION

35.     After the HDJV Mediation, VI negotiated with HDJV, and settled its outstanding claims, *including the Pass-Through Claims*. (CO 40, attached hereto as **Exhibit 15**.)

36.     By executing CO 40, VI agreed that the change order:

incorporates in the Subcontract all request for change orders, field work orders, claims for additional compensation, clarifications made by Request(s) for Information, and returned submittals through the date of the SCO. By signing this SCO, Subcontractor accepts that the value of this SCO represents full compensation for the work referenced in the SCO including but without limitation all direct cots, indirect costs, overhead costs, general and administrative costs, profits and all changes and effects (direct, indirect, consequential, including impacts and cumulative impacts) associated with the SCO Work and the Work associated with RFIs and submittals up to the date of this SCO.

(*Id.* at 2.)

## ARGUMENT

## I.   SUMMARY JUDGMENT IS NOT APPROPRIATE AS TO LUDVIK'S CLAIM FOR NEGLIGENT MISREPRESENTATION.

Fact issues preclude summary judgment on the negligent misrepresentation claims. VI first moved for summary judgment on Ludvik's claim for negligent misrepresentation on various grounds. (Dkt. 64 at 14-27.) In doing so, VI misconstrued the nature of the claim by improperly relying upon the deposition testimony of Ludvik's Rule 30(b)(6) designee. (*Id.* at 15.) Worse, VI attempted to limit Ludvik's claim based upon a remark by Ludvik's *counsel* at the deposition. (*Id.*)

The jurisprudence of this circuit is clear that a party or its legal counsel cannot define or otherwise limit the scope of its claims at a deposition. Instead, the nature of a party's claims is defined by the operative pleading. "We agree with our sister circuits that the testimony of a Rule 30(b)(6) witness is merely an evidentiary admission, rather than a judicial admission." *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1261 (10th Cir. 2016). This result is based on the principle that a deponent can testify regarding factual evidence, but not legal conclusions. *Id.*; *see also Velazquez v. Greyhound Lines, Inc.*, No. 2:19-cv-00493, 2020 U.S. Dist. LEXIS 268338, **25-26 (D. Utah Aug. 18, 2020) (quoting *Vehicle Mkt. Research* for the proposition that "'the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony'"). Instead, "[t]he courts look to the pleadings as part of the record in passing on the relevancy of evidence and to determine the issues to be submitted to the jury. For these purposes, the pleadings are used as judicial and not as evidentiary admissions, and they are conclusive until withdrawn or amended." *Luna v. Luna*, 2020 UT 63, ¶ 28, 474 P.3d 966 (quotations omitted). This Court must do the same and look

towards the Complaint rather than snippets of Ludvik's deposition testimony—or worse, non-binding commentary from Ludvik's counsel—when construing the nature of Ludvik's claims.

The Complaint specifically identifies two categories of conduct which constitute the basis of Ludvik's negligent misrepresentation claim—(1) omissions, specifically that VI failed to provide a Change Order Log associated with Change Order 26 (Dkt. 34 at ¶¶ 21-22) and that VI failed to disclose that it had waived and released the Pass-Through Claims (*Id.* at ¶¶ 23-25); and (2) specific language contained within the MOU and Settlement Agreement. (*Id.* at ¶ 26; 29-30.) VI may not restrict the scope or nature of Ludvik's claims based solely upon the deposition testimony of Ludvik's 30(b)(6) designee or counsel remarks. Thus, this Court should disregard the Motion's mischaracterization of Ludvik's claims and instead proceed to evaluate the Motion given the scope of the claims as defined in the Complaint.[4]

### A.    The Mediation Act Does Not Bar the Negligent Misrepresentation Claim.

Based on the incorrect assumption that Ludvik's entire claim for negligent misrepresentation was based on affirmative misrepresentations made in the course of settlement negotiations, VI summarily states—with no analysis—that Utah's Uniform Mediation Act bars the entire claim.  This Court already recognized that the claim is based upon omissions and language in the MOU and Settlement Agreement as well. Neither of these two categories of claims are barred by the Mediation Act and thus the Motion fails as to negligent misrepresentation.

---

[4] Counsel's off-hand remark in the deposition that he did not think, at that time, one could "rely" on an omission cannot be taken as a judicial admission of Ludvik. Without delving into metaphysics, one cannot rely on something never uttered.  Instead, a party may rely on the fact of a failure to speak when a duty to speak exists, which is the omission here.  As discussed below, the jurisprudence is clear that a party may assume the absence of certain facts when another party has a duty to reveal those facts and does not. *See, e.g.*, *Taylor v. Smith, Barney & Co.*, 358 F. Supp. 892, 896, n.10 (D. Utah 1973). Counsel's statements cannot change the law, and did not change the nature of Ludvik's claims.

First, Ludvik's claims related to omissions are not, by definition, "mediation communications." Thus they not barred by the Mediation Act. Thereunder, "'Mediation communication' means conduct or a statement, whether oral, in a record, verbal, or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." Utah Code Ann. § 78B-10-102(2). In other words, the conduct or statement must occur in connection with a mediation. *See id.* The *omissions* complained of by Ludvik are the exact opposite—conduct or statements that *__did not__* occur during the mediation.

While Ludvik is unaware of any law in this jurisdiction on this issue, other courts have opined that a similar mediation "privilege does not protect non-communicative mediation conduct." *Doublevision Entm't, LLC v. Navigators Specialty Ins. Co.*, No. 14-CV-02848, 2015 WL 370111, 2015 U.S. Dist. LEXIS 10425, *5 (N.D. Cal. Jan, 28, 2015); *see also Hart v. Larson*, No. 3:16-cv-01460, 2018 U.S. Dist. LEXIS 144628, 2018 WL 4053317, at *4 (S.D. Cal. Aug. 24, 2018) (holding that "discussion of settlement offers *not* conveyed . . . because settlement offers *not conveyed* are not writings and communications made 'for the purpose of, in the course of, or pursuant to, a mediation'" (emphasis in original, citation omitted)); *Perez v. Indian Harbor Ins. Co.*, 613 F. Supp. 3d 1171, 1183, n.6 (N.D. Cal. 2020) (rejecting argument that "silence in mediation is communicative" and determining that "walking out of the mediation without making a settlement offer" was admissible noncommunicative mediation conduct). And, of course, not all conduct is communicative. *See Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*, No. 11-CV-01036, 2017 WL 282583, 2017 U.S. Dist. LEXIS 9200, *15 (N.D. Cal. Jan. 23, 2017 (holding that the "bald assertion that all conduct in the course of a mediation is necessarily

communicative . . . is flat-out wrong"). The rationale of these courts is consistent, and consistent with the policy reasons behind the Mediation Act encouraging candor in communications. Those policy reasons do not shield non-communicative behavior. This Court should adopt this line of reasoning and apply it here.

Contrary to VI's assertions, and because this Court dismissed any such claims, Ludvik does not base its current claim for negligent misrepresentations based on any affirmative statements made in mediation.[5] Instead, the claim is based, in part, upon omissions—*i.e.*, conduct and statements that **did not** happen in mediation. VI's failure to disclose material information regarding its waiver of the Pass-Through Claims is non-communicative and thus is not a "mediation communication" barred by the Mediation Act. Thus, summary judgment is not appropriate.

Ludvik's claims relate also to specific language contained within the MOU and Settlement Agreement that are not barred by the Mediation Act, because an exception applies. More specifically, "[t]here is no privilege under [the Mediation Act] for a mediation communication that is . . . in an agreement evidenced by a record signed by all parties to the agreement." Utah Code Ann. § 78B-10-106(1)(a). The MOU and Settlement Agreement are both written agreements signed by all parties. (Exh. 13, at 2; Dkt. 65-1, at 11.) Thus, the remainder of Ludvik's negligent misrepresentation claim based upon specific language contained within the MOU and Settlement Agreement is subject to an exception and thus is not barred by the Mediation Act.

---

[5] Aside from the statements made in writing in the MOU and Settlement Agreement, discussed below.

**B.**     **The Economic Loss Rule Does Not Bar the Negligent Misrepresentation Claim.**

VI next argued that the economic loss rule purportedly bars Ludvik's entire claim for negligent misrepresentation because it is a mere duplication of its breach of contract claim. (Dkt. 64 at 18.) In making this argument, VI again misconstrued the nature of Ludvik's claims and also misapplied the economic loss rule.

Ludvik of course acknowledges that Utah courts apply "the economic loss rule to a case in which the alleged fraudulent inducement **overlaps completely** with a claim for breach of contract." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 16, 435 P.3d 193 (emphasis added). The *HealthBanc* court explicitly refused, however, to "foreclose the possibility of a fraudulent inducement exception in some other circumstance." *Id.* at ¶ 23 (concluding that the court "need not reach that question here"). Subsequent interpretation of the *HealthBanc* opinion reveals that this Court has allowed fraudulent inducement claims akin to the fact pattern of this case. Reviewing the claims themselves demonstrates they are not barred by the economic loss rule.

The first category of conduct relates to omissions—specifically that VI failed to provide a Change Order Log associated with Change Order 26 and failed to disclose that it had waived and released the Pass-Through Claims. (SAMF ¶¶ 16-17.) First, the omissions cannot constitute a breach of contract because it is axiomatic that a contract cannot be breached before it exists. *See e,g., Perenco Nigeria Ltd. v. Ashland Inc.*, 242 F.3d 299, 305 (5th Cir. 2001) (holding that "alleged misrepresentations that pre-date the very existence of a contract cannot constitute a breach of that contract"); *FDIC v. Floridian Title Group, Inc.*, 972 F. Supp. 2d 1289, 1295 (S.D. Fla. 2013) (a party "cannot be in breach of a contract where the alleged breach occurred before

the contract formed"). Because a cause of action does not exist[6] for breach of contract regarding pre-Settlement Agreement omissions, it does not completely overlap and is not barred by the economic loss rule.

This Court recently examined this issue in *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-512, 2021 WL 4097852021, U.S. Dist. LEXIS 22734 (D. Utah Feb. 5, 2021). Therein, the court engaged in a thorough analysis of *HealthBanc*, discussed above, and determined that "a fraudulent inducement exception to the economic loss rule exists under Utah law." *Id.* at *21. More specifically, the statements at issue in *Ennis* were made prior to the execution of various promissory notes. *Id.* at *30. The court then cited *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 76, 436 P.3d 151 for the proposition that Utah law allows "a claim for fraud in the inducement to proceed because that claim included allegations that the defendant committed a tort before the contract was ever entered into by allegedly misrepresenting facts before the contract was awarded." (quotation marks omitted). Thus the court went on to hold, "*KTM Health* is persuasive authority for this court to predict that the Utah Supreme Court would hold that Plaintiffs' fraudulent inducement claim—which alleges misrepresentations made prior to their signing the Notes and Confessions of Judgment—is not barred by the economic loss rule." *Id.* at *31.  It finally concluded, "Because the existence of an independent duty is a prerequisite to this conclusion, the court predicts that the Utah Supreme Court would hold that Utah law imposes an independent duty on a speaker to tell the whole truth." *Id.* Thus Utah law holds that, similar to a claim for fraudulent inducement, a claim for negligent misrepresentation based upon pre-contractual omissions is not barred by the economic loss rule as a matter of law.

---

[6] To the extent that this Court finds a complete overlap here, which it should not, it should simply construe Ludvik's claims regarding the omissions to be one for breach of contract as opposed to negligent misrepresentation.

Ludvik notes there is arguably contrary authority. An older case from the District of Utah took a potentially different approach to resolve a similar issue. In *Preventative Energy Solutions, LLC v. NCAP Ventures 5, LLC*, the District of Utah determined that "the court's application of the economic loss rule does not turn on the timing of the tort in the precontract negotiation period." No. 2:16-CV-809, 2017 WL 87028, 2017 U.S. Dist. LEXIS 4195, *19 (D. Utah Jan. 10, 2017). Instead, the application of the economic loss rule turned as to whether separate duties exist. *Id.* at *16 The *Preventative* Court then analyzed two similar cases, *Hermansen* and *Bigpayout*, which explained that the economic loss rule does not bar claims for fraudulent inducement because the duties to convey accurate information are extracontractual. *Id.* at **17-19. Similar to the issues in this case, the plaintiff in *Preventative* "could never intelligently negotiate and allocate risk under the terms of the MSA where [it] was allegedly brought to the bargaining table under false pretenses." *Id.* at **19-20 ("The purpose of the economic loss rule is to promote the allocation of risk through contract.") Thus, that court held that the negligent misrepresentation claim at issue was not barred by the economic loss rule. *Id.* at *20.  For these reasons, the *Preventative Solutions* case should not derail this Court's application of Utah law in denying the motion for summary judgment.

As thoroughly discussed in the next section, VI owed a duty of disclosure associated with its status as a party to a business negotiation, which arises out of Utah law—not the Settlement Agreement. (*See infra* § I.C.) Nothing in the Settlement Agreement explicitly confers a duty of disclosure upon VI. Instead, similar to *Preventative*, Ludvik was brought to the bargaining table under false pretenses and its remedy for this conduct is to sue in tort for negligent misrepresentation. *See* 2017 U.S. Dist. LEXIS 4195, *20. Because Ludvik has alleged two

distinguishable duties and theories of recovery, the economic loss rule does not apply to the omissions underlying the negligent misrepresentation claim.

The second category of conduct relates to statements made in the MOU and Settlement Agreement themselves regarding the viability of the Pass-Through Claims. More specifically, the Complaint identified certain specific statements made in the MOU (Dkt. 34 at ¶ 26) and in the Settlement Agreement (*Id.* at ¶ 30) whereby Ludvik was induced to enter into the Settlement Agreement and reasonably relied thereon in doing so. Ludvik concedes that, to the extent these statements create an independent contractual duty or obligation or are otherwise an actionable warranty, they should have been—and were—brought as a breach of contract claim.

Importantly however, the *HealthBanc* court specifically did not address "the broader question of whether an exception to the economic loss rule exists for fraud claims in which the alleged fraud does not also constitute a breach of a warranty in the contract." *Chinitz v. Ally Bank*, No. 2:19-cv-00059, 2020 U.S. Dist. LEXIS 61792, *18, n.78 (D. Utah Apr. 7, 2020) (citations omitted). "Because no breach of contract claim would lie for false representation or disclosure—as opposed to breach of a warranty—*HealthBanc* would not itself foreclose such a fraud claim." *Id.* (citations omitted). So too here, Ludvik has identified certain statements within the MOU and Settlement Agreement which do not independently create a duty and thus the appropriate remedy still lies in tort.   At a minimum, before this Court makes a final determination on this issue before submitting it to a jury, it should allow the facts to come in at trial rather than completely foreclosing that opportunity as VI desires.

For example, Paragraph 30 of the Complaint identifies two contractual obligations—(1) "VI agrees to take reasonable steps necessary to support the LE Pass-Through Claims against

HDJV" and (2) "VI party [sic] agrees to reasonably cooperate with LE regarding the pursuit of the LE Pass-Through Claims." (Dkt. 34 at ¶¶ 30.b; 30.g.) Ludvik also brought a breach of contract claim based, partially, on those same obligations. (*Id.* at ¶ 76.) Ludvik concedes that these two obligations may not form the basis of its negligent misrepresentation claim, as those completely overlap and thus likely are barred by the economic loss rule. The other statements identified therein, however, do not create an independent duty. As an example, the phrase "This Agreement and this release is not intended and should not be interpreted to act as a release of HDJV of any LE Pass-Through Claims" is merely a recital which is neither an obligation nor a warranty. (*Id.* at ¶ 30.e.) Instead, the basis of Ludvik's claim is that this, and other language in the Settlement Agreement intentionally or negligently led Ludvik to believe that the Pass-Through Claims were viable and had not been released. Because there are no express warranties in the MOU or the Settlement Agreement regarding the viability and recovery of the Pass-Through Claims—as VI itself admits (Dkt. 64 at 25)—those claims are not viable contract claims and thus do not completely overlap. Thus, the economic loss rule does not apply, the claims are properly brought in tort, and this Court should deny summary judgment.

C.     **VI's Various Arguments Specific to the Omissions Fail.**

This Court should reject VI's next claims that the portion of Ludvik's claim regarding VI's omissions fails as a matter of law because VI provided Ludvik with a completely separate document which VI contends put Ludvik on actual notice, as a matter of law, that VI had failed to preserve the Pass-Through Claims. (Dkt. 64 at 27.) While Ludvik acknowledges that VI eventually sent Ludvik the October 1 Letter on or about December 12, 2019, more than two months after VI had received it, VI did not tell Ludvik that VI had expressly waived the Pass-Through Claims nine days earlier on December 3, 2019 when it signed CO 26. (SAMF ¶ 13-14.)

The Pass-Through Claims were waived more than a week before VI finally and belatedly shared the October 1 Letter. Thus, whether Ludvik had notice of HDJV's position on December 12 is irrelevant.

When Ludvik received the October 1 Letter, it was not put on notice of HDJV's position concerning the Pass-Through Claims because Ludvik reasonably assumed that VI included the Pass-Through Claims on the change order logs to exempt them from waivers. (SAMF ¶ 14.) But whether Ludvik was put on notice of the viability or not of the Pass-Through Claims with the October 1 Letter depends on whether a reasonable person would know by reading the October 1 Letter, in the context of VI's continuing to ask for more information and telling Ludvik that the Pass-Through Claims were still in play that VI had waived the Pass-Through Claims. *See EDSA/Cloward, L.L.C. v. Klibanoff*, 2005 UT App 367, ¶ 21, 122 P.3d 646, 651 ("Whether the work and materials provided adequate notice depends on if a reasonable person would know by looking at the land that lienable work is underway.") And questions of reasonableness are "questions of fact" for a jury to decide, not the court on summary judgment. *Id.* (citing *Berenda v. Langford,* 914 P.2d 45, 54 (Utah 1996) (finding summary judgment to be appropriate only when "reasonable persons could not disagree about the underlying facts or about the application of the governing legal standard to the facts.").  The effect, or not, of the October 1 letter in all of the weeks' long circumstances surrounding it is up to the jury.

VI further claims that Ludvik's claim regarding VI's omissions fails because Ludvik has not demonstrated reasonable reliance upon VI's omissions. (Dkt. 64 at 28-29.) More specifically, VI claims that Ludvik's corporate representative did not review the VI-HDJV change orders before signing the Settlement Agreement. (*Id.* at 28.) This testimony is certainly not fatal to

Ludvik's claim. *See Merchs. Bonding Co. v. First Am. Title Ins. Agency of Utah, Inc.*, No. 2:06-CV-413, 2008 U.S. Dist. LEXIS 63038, *12 (D. Utah Aug. 18, 2008) (rejecting argument on summary judgment that there was no reliance because party did not look at title report and determining there was a question of fact).

Here too, there is at least a dispute of fact as to whether Ludvik relied on VI's material omissions. Indeed, "[a]ny reasonable plaintiff presumably actually will have relied upon a material omission which by definition is an omission which might be of importance to him." *Taylor v. Smith, Barney & Co.*, 358 F. Supp. 892, 896, n.10 (D. Utah 1973). And, the evidence demonstrates that Ludvik did in fact rely on VI's failure to speak. (SAMF ¶ 24.) Ludvik relied on the fact that VI didn't admit to having waived the claims when it settled with VI, and agreed to accept a much lower amount in settlement to resolve all other claims between it and VI. (*Id.*)

Lastly, VI argued that the omissions-based claim fails because Ludvik failed to establish that VI had a duty to disclose. (Dkt. 64 at 29-31.) Utah courts recognize that "whether a duty to speak exists is determinable by reference to all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties." *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1162 (D. Utah 2018) (quoting *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1328 (Utah 1990)). "The Utah Supreme Court has provided examples of transactions or relations that may give rise to a duty of disclosure. One such example is 'where a party negotiating for a contract is cognizant of facts of which the other party is presumed ignorant and for the disclosure of which one party must rely upon the other to enable it to form a judgment as to the expediency of entering into the contract on the terms proposed.'" *Id.* (quoting *Banberry*, 786 P.2d at 1330). That is this case. "Two relevant factors

'important in this determination are' '[t]he importance of the fact not disclosed' and the 'conduct of the person not disclosing something to prevent discovery ....'" *Id.* (alterations in original) (quoting *Banberry*, 786 P.2d at 1331). Under the circumstances here, it is at least a fact question whether VI owed a duty of disclosure before assuring Ludvik it was going to bring claims it knew, or should have known, no longer existed.

Section 551 of the Restatement (Second) of Torts, on which Utah courts routinely rely,[7] also sets forth commonly understood situations where a duty to disclose exists. The Restatement provides, "One party to a business transaction is under a duty to exercise reasonable care to disclose [the following matters] to the other before the transaction is consummated":

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2) (1977). The facts of this matter demonstrate that VI's misconduct falls into at least one, if not all four of the above-recognized situations where the duty of disclosure arises.

---

[7] Utah courts routinely look to Restatement (Second) of Torts § 551 when addressing concealment claims. *See, e.g.*, *Jensen*, 2020 UT App 124, ¶ 20; *In re Archibald*, 482 B.R. 378, 390–91 (Bankr. D. Utah 2012); *In re Perkins*, 298 B.R 778, 788 (Bankr. D. Utah 2003); *Mitchell v. Christensen*, 2001 UT 80, ¶ 12, 31 P.3d 572; *Banberry*, 786 P.2d at 1330–31; *Elder v. Clawson*, 384 P.2d 802, 382–83 (Utah 1963).

VI knew or should have known that it had failed to include the Pass-Through Claims on its Change Order Log and that it made statements representing that the Pass-Through Claims were still valid and enforceable. (SAMF ¶ 22.) VI also knew, or should have known, that a primary reason for Ludvik's willingness to enter into the Settlement Agreement at a multi-million-dollar discount was premised on the continued viability of the Pass-Through Claims. Given the express carve-out of the Pass-Through Claims in the Settlement Agreement, Ludvik could make no other assumption. (Dkt. 65-1 at 2-3.) VI thus owed a duty of disclosure to Ludvik to correct any partial or ambiguous statements VI made to Ludvik concerning the Change Order Log and the validity and enforceability of the Pass-Through Claims. *See* Restatement (Second) of Torts § 551(2)(b).

VI should have known also at the time the parties executed Settlement Agreement that it had failed to include the Pass-Through Claims on the Change Order Log and that HDJV considered the Pass-Through Claims as having been waived in the October 1 Letter. (SAMF ¶ 11.) VI also would have known that Ludvik assumed and relied upon the validity and enforceability of the Pass-Through Claims when entering into the Settlement Agreement, again, due to the express carve out of the Pass-Through Claims and the promises it made to help Ludvik pursue the Pass-Through Claims against HDJV in the Settlement Agreement. (Dkt. 65-1 at 2-3; SAMF ¶ 26.) Under these circumstances, VI had a duty of disclosure to Ludvik as a matter of law. *See id.* § 551(2)(c), (d); *see cf. Shree Ganesh, LLC v. Weston Logan, Inc.*, 2021 UT 21, ¶¶ 31–37, 491 P.3d 885 (as perhaps the most recent pronouncement of Utah law on this issue, acknowledging the "duty to disclose all material facts necessary to prevent [a] statement from being misleading," and noting, in the real property context, that material facts must be disclosed

to include "any matter or information that would have been an important factor in a buyer's decision to purchase the real estate"). Ludvik "bought" what VI was selling on information that was incomplete, that it did not know was incomplete, and on circumstances unknown to it that were diametrically opposed to what VI was saying.

### D. The Merger Clause, Non-Reliance Clause, and Mutual Release Do Not Bar Ludvik's Negligent Misrepresentation Claim.

VI next summarily argues, with no meaningful analysis or applicable case law, that various clauses within the Settlement Agreement—including fragments of a "combined merger and non-reliance clause" as well as an incomplete recitation of a release provision—conclusively bar Ludvik's claim for negligent misrepresentation. (Dkt. 64 at 31-33.) With respect to the merger and non-reliance clause, case law is clear that VI cannot exclusively rely on these general provisions, without more, to defeat a negligent misrepresentation claim on summary judgment. Regarding VI's arguments with respect to the release, VI selectively misquoted the provision, which expressly carves out claims relating to the Pass-Through Claims and VI's associated liability for failing to present them. Thus, these of VI's arguments fail as the others do.

This Court should reject VI's claim that Ludvik is prevented, as a matter of law, from bringing a negligent misrepresentation claim because the Settlement Agreement contains a general disclaimer. Put differently, VI claims that it is definitively absolved of all liability for its fraudulent conduct due to a boilerplate provision in the Settlement Agreement. The District of Utah has rejected similar conclusory arguments. "It is axiomatic that a party cannot use a boilerplate disclaimer as a shield from liability for fraudulent conduct." *Preventive Energy Solutions, LLC v. NCAP Ventures 5 LLC*, No. 2:16-CV-809, 2017 WL 87028, 2017 U.S. Dist. LEXIS 4195, *9 (D. Utah Jan. 10, 2017). Thus, the existence of a disclaimer or non-reliance

clause, without more, does not defeat a claim for negligent misrepresentation as a matter of law.[8]

*Id.*; *see also Paskenta Enters. Corp. v. Cottle*, No. 1:17-CV-33, 2018 WL 522322, 2018 U.S. Dist. LEXIS 10692, *11 (D. Utah Jan. 22, 2018) (collecting cases for the proposition that nonreliance clauses do not bar claims for negligent misrepresentation clauses as a matter of law); *Reperex, Inc. v. Coldwell Banker Commer.*, 2018 UT 51, ¶ 27, 428 P.3d 1082 (reversing dismissal of negligent misrepresentation claim based on existence of nonreliance clause); *Direct Benefits, LLC v. TAC Fin. Inc.*, No. 13-CV-1185; 2014 U.S. Dist. LEXIS 20941, **18-19 (D. Md. Feb. 20, 2014) (similar merger clause did not prohibit party from claiming reliance on pre-merger representations and omissions); *TL of Fla., Inc. v. Terex Corp.*, No. 13-CV-2009, 2015 WL 5618893, 2015 U.S. Dist. LEXIS 128152, *14 (D. Del. Sept. 24, 2015); ("In considering whether a merger clause bars a fraudulent inducement claim, Florida courts perform a case-by-case analysis and look to see if the merger clause expressly and specifically addresses the misrepresentations upon which the claims are based.") VI's conclusory analysis stops here, and thus summary judgment is not warranted.

Instead, whether these types of clauses preclude Ludvik's claim for negligent misrepresentation depends on whether the clauses render Ludvik's "reliance unreasonable as a matter of law." *Preventive Energy Solutions*, 2017 U.S. Dist. LEXIS 4195 at *10. "Reasonable reliance must be considered with reference to the facts of each case, and is usually a question for the jury to determine." *Id.* (quotations omitted). First, the language of the merger and non-reliance clauses within the Settlement Agreement are general in nature and do not make any specific reference to the issue in this case—the viability of the Pass-Through Claims. (Dkt. 65-1

---

[8] This Court in *Preventive Energy Solutions* applied the same analysis in determining that an integration clause does not prevent a claim of negligent misrepresentation as a matter of law. 2017 U.S. Dist. LEXIS 4195 at **14-15.

at § 12.). Rather, these clauses are merely two boilerplate sentences at the end of the Settlement Agreement. (*Id.*) And, as thoroughly explained above, Ludvik has established that it has reasonably relied upon VI's negligent misrepresentations. (SAMF ¶ 24.)   More specifically, Ludvik relied on VI's silence, keeping from Ludvik the fact that it had already waived the Pass-Through Claims when it settled with VI.   In reliance Ludvik agreed to accept a much lower amount in settlement to resolve all other claims between it and VI. (*Id.*) Thus, Ludvik's reliance is not unreasonable as a matter of law and summary judgment is inappropriate despite the existence of the boilerplate merger and non-reliance clauses set forth in the Settlement Agreement.

Next, VI argues that "Ludvik's 'negligent misrepresentation' claim is a tort claim relating to the Project, and thus falls within the ambit of this release." (Dkt. 64 at 32.) In doing so, VI entirely ignored the specific carveouts from the release provision in the Settlement Agreement. The release provides that Ludvik "does not release VI from", among other things, "the LE Pass-Through Claims" and "liability for failing to present [Ludvik]'s claims" referenced in various e-mails, including the August 15, 2019 e-mail discussed by VI in the Motion. (*Id.* at 17-18; Dkt. 65-1 at 3.) First, Ludvik's claim for negligent misrepresentation arises out of VI's conduct regarding the Pass-Through Claims and thus is excepted from the release. In addition, Ludvik's claim more specifically arises out of VI's liability for failure to present Ludvik's claims to HDJV—which are explicitly excepted from the release. VI relies upon the August 15, 2019 e-mail and the accompanying October 1, 2019 denial letter to attempt to prove its claim that Ludvik had actual notice that VI had impaired the viability of the Pass-Through Claims. (Dkt. 64 at 17-18.) VI cannot use this argument as a sword and then conveniently ignore it in this context.

As essentially admitted by VI, Ludvik's negligent misrepresentation claim is based, at least in part, on VI's liability for failing to present Ludvik's claims in the August 15, 2019 e-mail. Thus, this claim is specifically excepted from the release. Summary judgment is inappropriate on these grounds as well.

## II.   PARTIAL SUMMARY JUDGMENT IS INAPPROPRIATE AS TO LUDVIK'S CLAIM FOR BREACH OF CONTRACT.

There did come a time in its Motion that VI correctly construed the scope of Ludvik's claims. More specifically, Ludvik does claim VI breached the Settlement Agreement by (1) failing to reasonably cooperate with Ludvik; and (2) failing to take reasonable steps to support the Pass-Through Claims when it executed post-settlement change orders and entered into the VI-HDJV Settlement.[9] (Dkt. 64 at 33.) Summary judgment is still not appropriate, including as to these parts of Ludvik's breach of contract claim.

### A.   VI's Execution of Post-Settlement Change Orders Support a Claim for Breach of Contract.

With respect to the post-settlement change orders, the Motion takes the position that those actions cannot constitute a breach of contract as a matter of law because (1) they do not reference the purported "waiver" language or the Change Order Log; and (2) Ludvik has not been damaged a result thereof. (Dkt. 64 at 34.) VI misses the mark because the post-settlement change order, CO 40, put the final nail in the coffin on the Pass-Through Claims. (SAMF ¶¶ 35-36.) VI settled all claims it had or could have brought against HDJV in CO 40, which of course included Ludvik's Pass-Through Claims. But months earlier, VI committed to "take reasonable steps necessary to support the Pass-Through Claims against HDJV" and to "reasonably cooperate

---

[9] As VI correctly notes, Ludvik also has a claim for breach of contract stemming from $327,677 in unpaid "retainage" which is not at issue in this Motion as VI is not seeking summary judgment as to that part of Ludvik's claims. (Dkt. 65 at 33, n.6.)

with [Ludvik] regarding the pursuit of the Pass-Through Claims." (Dkt. 65-1, at §§ 3.a; 6.b.) It never did so, and settling all claims VI had against HDJV completed the breadth of its earlier waivers.

**B.      VI's Execution of the VI-HDJV Settlement Also Supports a Claim for Breach of Contract.**

With respect to the VI-HDJV Settlement, the Motion argues that VI's execution of that agreement cannot constitute a breach of contract as a matter of law because Ludvik had already released its own Pass-Through Claims against HDJV via the Ludvik-HDJV Settlement and thus Ludvik has not been damaged by the VI-HDJV Settlement. (Dkt. 64 at 32-34.) Yet Ludvik could not have waived the Pass-Through Claims against HDJV as a matter of law, because the Pass-Through Claims were never Ludvik's to waive. Ludvik admits that if it had any such claims, which it did not, they were waived in connection with the December, 2020 mediation. (Dkt. 65-11, at 3 (including the "BHS Pass-Through Claim" as those released by Ludvik).) If VI sincerely believed the claims belonged to Ludvik, why did VI waive them in March?  It is indisputable that the Pass-Through Claims did not belong to Ludvik. Ludvik's waiver of a claim that did not belong to it is not a waiver of that claim. *See Peters v. Weatherwax*, 731 P.2d 157, 158 (Haw. 1987) (finding that while "the plaintiff may have waived the right to claim special damages … the right to recover medical expenses was not his to waive").

**III.    SUMMARY JUDGMENT IS INAPPROPRIATE ALSO AS TO LUDVIK'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING.**

Lastly, summary judgment is inappropriate on Ludvik's claim for breach of the covenant of good faith and fair dealing. VI's arguments presuppose that summary judgment is appropriate on Ludvik's claims for breach of contract, but because it is not appropriate as to *those* claims, it is not appropriate as to *these* claims. (Dkt. 64 at 41.) With respect to the merits, VI again

misconstrues the nature of Ludvik's claims. (*Id.*) Ludvik has set forth ample evidence that VI breached the covenant of good faith and fair dealing when it failed to inform Ludvik that it had waived and released the Pass-Through Claims and continued to behave and conduct itself as if the Pass-Through Claims were still enforceable against HDJV.

Utah's jurisprudence on this issue is robust. "The covenant of good faith and fair dealing exists in every contract in Utah, creating an 'implied duty that contracting parties refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract.'" *Velocity Press v. Key Bank, NA*, 570 Fed. Appx. 783, 790 (10th Cir. 2014) (quoting *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 9, 266 P.3d 814). "The 'core function' of the covenant of good faith and fair dealing is to prevent 'another's opportunistic interference with the contract's fulfillment.'" *Addiction Treatment Ctrs., Inc. v. Shadow Mt., LLC*, No. 2:16-CV-339, 2020 WL 2543238, 2020 U.S. Dist. LEXIS 88110, *26 (D. Utah May 19, 2020) (quoting *Young Living*, 2011 UT 64 at ¶ 9). "Breach of the covenant should be analyzed as an objective question, without regard to a party's subjective state of mind." *Velocity Press*, 570 Fed. Appx. at 790. "Under Utah law, 'whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law.'" *Blakely v. USAA Cas. Ins. Co.*, 500 Fed. Appx. 734, 739 (10th Cir. 2012) (quoting *Oman v. Davis Sch. Dist.*, 2008 UT 70, 194 P.3d 956, 968 (Utah 2008)). So too here, the issue of breach of the implied covenant of good faith and fair dealing is a factual issue inappropriate for summary judgment.

In its Motion, VI relies heavily on the argument that Ludvik's claim for breach of the covenant of good faith and fair dealing is "derivative" of its claim for breach of contract and, because that claim fails as a matter of law, so does its claim for bad faith. (Dkt. 64 at 40-41.)

Summary judgment is inappropriate as to the breach of contract claim and thus VI's argument fails. *See, e.g.*, *Powderham v. Synergy Worldwide, Inc.*, No. 2:08-CV-548, 2010 WL 988494, 2010 U.S. Dist. LEXIS 23966, *25 (D. Utah Mar. 12, 2010) (holding that "for the same reasons judgment is denied . . . on the breach of contract claim, judgment is DENIED . . . on the good faith and fair dealing claim"). This Court's analysis should stop there, and it should deny summary judgment.

Additionally, VI conveniently glossed over the fact that it only moved for *partial* summary judgment on the breach of contract claim by relegating this fact to a footnote. (Dkt. 64 at 41, n.8.) While VI seeks to downplay the issue, the fact of the matter is that even if this Court were to grant partial summary judgment on the breach of contract, VI cannot rely on its conclusory argument that summary judgment is automatically appropriate if this Court were to grant that part of the Motion. This is because Utah law does not require that the exact conduct underlying the bad faith claim also constitute a breach of contract. Instead, Utah Law merely requires the existence of facts required to establish "**a** breach of contract." *Classic Air Care, LLC v. Aetna Life Ins. Co.*, No. 2:20-CV-506, 2021 WL 199286, 2021 U.S. Dist. LEXIS 11366, *22 (D. Utah Jan. 19, 2021) (emphasis added); *see also Sandoval v. State Farm Mut. Auto. Ins. Co.*, No. 1:21-CV-171, 2022 WL 2257242, 2022 U.S. Dist. 112390, *15 (D. Utah June 23, 2022) ("With no breach, there is no bad faith.") In fact, other jurisdictions have gone so far as to explicitly state that the conduct underling the bad faith claim must be distinct from the conduct alleged to constitute a breach. *Abramson v. Affinity Fed. Credit Union*, No. 20-CV-13104, 2021 WL 3885325, 2021 U.S. Dist. LEXIS 165244, *17 (D.N.J. Aug. 31, 2021) ("A breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an

alleged breach of contract action.") Because VI has not sought summary judgment on Ludvik's entire claim for breach of contract,[10] Ludvik's claims for regarding good faith and fair dealing do not necessarily depend on the outcome of the Motion. VI's argument regarding the "derivative" nature of the claim fails and summary judgment is inappropriate.

VI's arguments also fail on the merits, and this Court has rejected similar arguments. "Defendants state in a conclusory manner that if there is no breach of contract, it follows that the University is also entitled to summary judgment on Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing." *Monahan v. Univ. of Utah*, No. 2:03-CV-34, 2005 WL 8176569, 2005 U.S. Dist. LEXIS 55595, *68 (D. Utah Apr. 7, 2005). "But the court finds that, based on the record before the court, that the Defendants have not met their burden on summary judgment." *Id.* VI's identical argument fails for the same reason.

VI again misconstrued Ludvik's claim by stating that "the only thing Ludvik has even alleged is that VI signed a handful of unrelated, post-Settlement Agreement [*sic*] that do not even reference the alleged 'waiver' language or Change Order Log at issue." (Dkt. 64 at 41.) Worse, VI relied upon its allegations regarding the absence of evidence of "intent" or "purpose" to harm Ludvik. *See, e.g.*, *Velocity Press*, 570 Fed. Appx. at 790 (party's subjective state of mind is irrelevant). The Motion ignores the Amended Complaint and the factual record.

Ludvik alleged, rather, that "VI breached the covenant of good faith and fair dealing when it failed to inform Ludvik that it had waived and released the Pass-Through Claims and continued to behave and conduct itself as if the Pass-Through Claims were still enforceable against HDJV." (Dkt. 34 at ¶ 84.) The evidence demonstrates that VI should have known it

---

[10] Though entirely unclear, it appears that VI conceded that it is not seeking summary judgment as to the entirety of Count V. (Dkt. 64 at 41-42) (only seeking summary judgment "as to the portions of" Count V).

waived and released the Pass-Through Claims before engaging in settlement negotiations by failing to include them on the Change Order Log accompanying Change Order 26, and because it was on notice that HDJV considered them waived in the October 1 Letter. (SAMF ¶ 11.)

Despite this, VI participated in mediation whereby Ludvik made it perfectly clear that it was willing to enter into an agreement—later memorialized in the Settlement Agreement—only if the Pass-Through Claims were in fact viable claims. (*Id*. at ¶ 21.) Based upon VI's omissions in mediation and the language in the MOU and the Settlement Agreement itself, VI induced and led Ludvik to believe that VI had done nothing to prejudice or devalue the Pass-Through Claims. (*Id*.) In other words, one of the key "fruits" of the Settlement Agreement was Ludvik's right to pursue the Pass-Through Claims through VI. And VI breached the covenant of good faith and fair dealing when it had destroyed Ludvik's right to do so but continued to misrepresent the viability of the Pass-Through Claims to induce Ludvik into entering into the Settlement Agreement. *See, e.g.*, *Velocity Press*, 570 Fed. Appx. at 790-91 (upholding a finding of breach of the covenant of good faith and fair dealing when party, among other things, had no intention to adhere to the terms of an agreement before it was unexecuted); *Blakely*, 2014 U.S. Dist. LEXIS 69910 at *4 ("Because Plaintiffs have adduced sufficient evidence of Defendant's bad faith that reasonable minds could differ as to whether Defendant breached the covenant of good faith and fair dealing, summary judgment was inappropriate.")

Thus, when Ludvik's claim is properly construed, the evidence can and likely will demonstrate to a reasonable jury that VI breached the covenant of good faith and fair dealing, and thus summary judgment is inappropriate.

## **CONCLUSION**

For the reasons stated above, this Court should deny the Motion so that the parties can turn to the damages portion of this case.

DATED: June 2, 2023.

                                         **SNELL & WILMER L.L.P.**

                                         */s/ Mark O. Morris*
                                         Mark O. Morris
                                         Tyson J. Prisbrey

                                         and

                                         **WOODS | AITKEN LLP**
                                         Joel D. Heusinger
                                         Kory D. George

                                         *Attorneys for Plaintiff Ludvik Electric Co*

4871-5182-0895