UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LUDVIK ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VANDERLANDE INDUSTRIES, INC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [105] DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-00462-DBB-CMR<br><br>District Judge David Barlow |

Before the court is Defendant Vanderlande Industries, Inc.'s ("Vanderlande") Motion for Partial Summary Judgment (the "Motion")[1] on the issue of damages against Plaintiff Ludvik Electric Company ("Ludvik").

## BACKGROUND

This case is about a construction dispute arising out of renovations on the Salt Lake City International Airport.[2] HDJV, the general contractor for that project, subcontracted with Vanderlande to install the airport's new baggage handling system.[3] Vanderlande then sub-subcontracted with Ludvik for electrical and mechanical work relating to the baggage handling system.[4] The court allowed the parties to bifurcate their discovery and dispositive motions to separately focus on two issues, liability and damages.[5] On December 19, 2023, the court entered an order granting in part and denying in part Defendant's motion for partial summary judgment

---

[1] Motion for Partial Summary Judgment ("MSJ Damages"), ECF No. 105, filed Sep. 26, 2025.
[2] *Id.* at 5.
[3] *Id.*
[4] *Id.*
[5] *See* Ninth Amended Scheduling Order, ECF No. 104, entered June 18, 2025.

on the issue of liability.[6] Pursuant to that order, all of Plaintiff's causes of action were dismissed except its claim for negligent misrepresentation.[7] Following an additional discovery period and numerous extensions of time, Vanderlande now moves for summary judgment on the issue of damages for the negligent misrepresentation claim.[8]

The court laid out much of the relevant background for this case in its previous order granting in part Defendant's motion for partial summary judgment on the issue of liability.[9] Only some of that extensive factual background will be repeated here.

**Pass-Through Claims**

In January 2019, Ludvik notified Vanderlande of certain "pass-through claims" that it wished to assert against HDJV through Vanderlande.[10] These claims arose because of project delays that were caused by the project Owner or HDJV.[11] Ludvik contends that, because of these delays, its schedule was compressed without any corresponding extension, and it incurred unanticipated inefficiency costs of around $9.4 million.[12]  In July 2019, Vanderlande signed Change Order 22 with HDJV, which stated: "It is agreed and understood that all costs for changes initiated prior to January 1, 2019 have been received by HDJV and that no additional cost for change initiated during 2018 will be accepted."[13] Prior to signing, Vanderlande confirmed with HDJV that Change Order 22 would not waive Ludvik's still-developing pass-

---

[6] *See* Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Partial Motion for Summary Judgment ("Summ. J. Order Liability"), ECF No. 80, entered Dec. 19, 2023.
[7] *Id.*
[8] *See* MSJ Damages.
[9] *Id.* at 2; Aff. of Douglas C. Alewelt ("Alewelt Aff.") ¶ 7, ECF No. 65-5, filed Apr. 17, 2023.
[11] Alewelt Aff. ¶ 7.
[12] *Id.*; Aperture Report 32–33, ECF No. 110-9, filed Nov. 21, 2025.
[13] Summ. J. Order Liability 3; *see also* Change Order 22, ECF No. 65-6, filed Apr. 17, 2023.

through claims.[14] Shortly after Change Order 22 was signed, Ludvik submitted its pass-through claim to Vanderlande, and Vanderlande submitted it to HDJV on August 15, 2019.[15] HDJV rejected Ludvik's pass-through claim in a letter to Vanderlande on October 1, 2019.[16] One of the reasons for this rejection is that the claim was not preserved by Change Order 22 and was "time barred."[17] On December 6, 2019, Vanderlande signed Change Order 26, which contained similar language to Change Order 22, purporting to waive any claims initiated prior to June 1, 2019, and not included on the attached change order log.[18]

Vanderlande informed Ludvik that the claim had been rejected but did not forward the October 1 letter to Ludvik until December 12, 2019.[19] Ludvik did not ask for clarification about whether its claims were time-barred, and the parties continued to discuss the denied pass-through claims.[20] During these discussions, Vanderlande acted as if the claims were rejected due to form and content inadequacies rather than any sort of waiver or time bar.[21] Ludvik and Vanderlande ultimately executed a Settlement Agreement in August 2020.[22] In that agreement, Ludvik released all of its claims against Vanderlande relating to the subcontract or the project except for its pass-through claims against HDJV.[23] Vanderlande's potential liability on those claims was limited to any amount paid by HDJV, and Vanderlande promised to cooperate with Ludvik in pursuing its pass-through claims.[24]

---

[14] Summ. J. Order Liability 3; Alewelt Aff. ¶ 15.
[15] Summ. J. Order Liability 3.
[16] Id.
[17] Id. at 3–4; Oct. 1, 2019, Letter, ECF No. 110-3, filed Nov. 21, 2025.
[18] Change Order 26, ECF No. 110–12, filed Nov. 21, 2025.
[19] Summ. J. Order Liability 4.
[20] Id. at 4–5.
[21] Id.
[22] VI/LE Settlement Agreement, ECF No. 110-15, filed Nov. 21, 2025.
[23] Id. § 5.
[24] Id. §§ 5(a), 6(b).

Ludvik later attended a mediation involving it, Vanderlande, HDJV, and the project owner.[25] Ludvik states that during the mediation, it learned for the first time that its pass-through claims were not on the Change Order 22 or Change Order 26 logs and that HDJV considered that omission to be an affirmative waiver by Vanderlande of Ludvik's pass-through claims.[26] Ludvik asserts that, as a result of the waived pass-through claims, it was forced to accept a less-favorable settlement with HDJV.[27] It ultimately settled and released all its claims against HDJV, including its pass-through claims.[28]

**Ludvik / Vanderlande Agreements**

Vanderlande and Ludvik's obligations and rights in this project are governed by a 2017 Project Subcontract Agreement ("PSA"),[29] which also incorporates the terms of a prior Installation Service Agreement ("ISA").[30] Under § 11.2 of the ISA, if Ludvik has a claim against HDJV, Vanderlande:

> may submit [Ludvik's] claims to [HDJV] provided that (a) [Ludvik] has submitted notices and claim documents in the form required by the Main Contract and in sufficient time for [Vanderlande] to comply with the deadlines provided in the Main Contract; and (b) [Ludvik] shall accept [Vanderlande's] prosecution of such claims at [Ludvik's] expense and [Vanderlande's] payment to [Ludvik] of any money that [Vanderlande] may receive from [HDJV] upon [Ludvik's] claims, in full and complete satisfaction and liquidation of [Vanderlande's] obligation to [Ludvik], it being understood and agreed that [Vanderlande] shall not have any other liability or responsibility to [Ludvik] by reason of Claims attributable to [HDJV].[31]

---

[25] Declaration of James Ludvik ("Ludvik Decl.") ¶ 14, ECF No. 110-7, filed Nov. 21, 2025.

[26] *Id.* ¶ 15.

[27] *Id.* ¶ 18.

[28] HDJV/LE Settlement Agreement, ECF No. 105-8, filed Nov. 21, 2025.

[29] VI/LE Subcontract ("PSA"), ECF No. 110-3, filed Nov. 21, 2025.

[30] *Id.* at 1 (Expressly incorporating the Installation Agreement Standard Terms and Conditions); Installation Agreement ("ISA"), ECF No. 110-18, filed Nov. 21, 2025.

[31] *Id.* § 11.2.

A claim under this section is considered a "pass-through claim." The ISA clarifies that Ludvik's "entitlement to compensation" in a pass-through claim against HDJV via Vanderlande "is expressly contingent upon [Vanderlande's] receipt of payment for [Ludvik's] claim from [HDJV].[32]

The ISA also limits Vanderlande's liability for damages arising out of inefficiencies or delays in § 4.3:

> [Ludvik] shall not be entitled to payment, damages, monies, or compensation from [Vanderlande] of any kind for direct, indirect or impact damages arising because of hindrance, inefficiency or delay from any cause whatsoever, whether reasonable or unreasonable, foreseeable or unforeseeable. contemplated or not contemplated, or avoidable or unavoidable, except as otherwise provided herein.[33]

Similar language in § 10.2 of the ISA[34] was removed by a modification listed in the PSA and was replaced with the sentence, "Ludvik agrees to the terms and conditions of the Holder/VI contract and accepts all flow down."[35] Section 10.2 of the ISA additionally clarifies that "[a]n extension of time shall be [Ludvik's] sole remedy for delay, unless the delay was caused by [HDJV], whereupon such claim shall be addressed as provided Section 11.2."[36]

## STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either

---

[32] *Id.*
[33] *Id.* § 4.3.
[34] *Id.* § 10.2.
[35] PSA § 12.3.
[36] ISA § 10.2.
[37] Fed. R. Civ. P. 56(a).

way."[38] The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[39] When viewing the record, the court "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[40]

## DISCUSSION

Ludvik's only remaining claim is negligent misrepresentation.[41] Under Utah law, a claim of negligent misrepresentation requires five elements:

> (1) the plaintiffs reasonably relied on the defendant's representation, (2) the representation constitutes a 'careless or negligent misrepresentation of a material fact,' (3) the defendant 'had a pecuniary interest in the transaction,' (4) the defendant 'was in a superior position to know the material facts,' and (5) the defendant 'should have reasonably foreseen that the injured party was likely to rely upon the' misrepresentation."[42]

Ludvik contends that Vanderlande misrepresented the continuing validity of Ludvik's pass-through claims during the parties' negotiation and execution of the Settlement Agreement.[43] Ludvik allegedly suffered damages when it relied on Vanderlande's misrepresentations by entering into the Settlement Agreement.[44] The amount of Ludvik's alleged damages for its negligent misrepresentation claim is equal to its calculated inefficiency damages for the HDJV-caused project delay.[45]

---

[38] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1169 (10th Cir. 2021) (citation omitted).
[39] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[40] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).
[41] *See* Summ. J. Order Liability.
[42] *Mitchell v. Smith*, No. 1:08-CV-103 TS, 2010 WL 5172906, at *8 (D. Utah Dec. 14, 2010) (*quoting Price–Orem Inv. Co. v. Rollins, Brown and Gunnel, Inc.*, 713 P.2d 55, 59 (Utah 1986)).
[43] Amended Compl. ¶¶57–65, ECF No. 34, filed Nov. 3, 2021.
[44] *Id.* ¶¶ 62–63.
[45] *Id.* ¶ 65; Aperture Report 32–33.

Vanderlande argues that Ludvik cannot show any damages as a matter of law because (1) the negligent misrepresentation claim will fail because it is based on a legal opinion, (2) the Subcontract between Ludvik and Vanderlande expressly bars inefficiency damages, (3) Ludvik's work was extended, not compressed, so inefficiencies could not have caused any damages, and (4) Ludvik's damages expert uses an unreliable methodology.[46]

## I.    Misrepresentation of a Legal Opinion

Vanderlande first argues that Ludvik cannot prove its damages because the negligent misrepresentation is based on a legal opinion rather than a material fact.[47] Under Utah law, the tort of negligent misrepresentation requires as one of its elements a "misrepresentation of a material fact."[48] Furthermore, "in Utah, misrepresentations of law and opinions about the legal effect of contracts are not adequate bases for actionable fraud."[49] Vanderlande contends that its alleged misrepresentation was a statement of legal opinion regarding the continuing viability of the pass-through claims and that Ludvik's negligent misrepresentation claim must fail.[50]

This argument goes to the viability of Ludvik's underlying negligent misrepresentation claim rather than damages. It is an argument about liability. But the deadline to file dispositive motions on the issue of liability has long since passed.[51] Vanderlande attempts to justify its liability argument by stating that it did raise the legal-opinion argument during the first summary judgment phase, and the court merely did not reach it.[52] However, Vanderlande did not initially

---

[46] MSJ Damages 2–3.
[47] *Id.* at 9.
[48] *Price–Orem Inv. Co.*, 713 P.2d at 59.
[49] *Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1556 (10th Cir. 1993) (citing *Gadd v. Olson*, 685 P.2d 1041, 1044 (Utah 1984)).
[50] MSJ Damages 10.
[51] *See* Ninth Amended Scheduling Order 3.
[52] Reply in Support Motion Partial Summary Judgment ("Reply") 8, ECF No. 114, filed Dec. 19, 2025.

raise the legal-opinion argument until its reply brief in the prior round of summary judgment briefing.[53]

In the Tenth Circuit, it is "well settled" that courts do not generally "review issues raised for the first time in a reply brief."[54] Because Vanderlande raised the legal-opinion argument for the first time in its liability reply brief, the issue was waived for purposes of that summary judgment motion,[55] so the court did not consider it in its prior summary judgment order on liability.[56] Now, the court is considering a motion for summary judgment on damages, not liability. Vanderlande did not seek, and the court did not grant, leave to file another motion for summary judgment on liability. Accordingly, the court declines to address the argument.

## II.    Waiver of Inefficiency Claims

Vanderlande next argues that Ludvik is not entitled to damages because the subcontract between the parties expressly waives delay and inefficiency claims.[57] Ludvik responds that the "VI/LE Subcontract" does not waive damages because (1) the waiver of delay damages in the ISA was expressly modified and removed in the PSA and (2) the parties' claims arising from the subcontract have already been settled, so it has no bearing on the negligent misrepresentation claim.[58]

---

[53] *Id.* (citing to Vanderlande liability Reply); *see also* Mot. for Summ. J. (Partial) Liability, ECF No. 64, filed Apr. 17, 2023 (making no legal-opinion argument).
[54] *United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013) (quoting *Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000)); *see also Surgenex, LLC v. Predictive Therapeutics, LLC,* 462 F. Supp. 3d 1160, 1177 (D. Utah 2020), *on reconsideration in part*, No. 2:19-CV-295-RJS-DAO, 2020 WL 8514831 (D. Utah July 17, 2020).
[55] *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief.").
[56] *See* Summ. J. Order Liability.
[57] MSJ Damages 13.
[58] Opp'n 24.

### A.    Contract Modification

When interpreting a contract under Utah law, courts "look to the writing itself to ascertain the parties' intentions."[59] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[60] Here, the plain language of the ISA unambiguously waives Ludvik's right to inefficiency or delay damages in two separate clauses. ISA § 4.3, "Existing Conditions," states in part:

> [Ludvik] shall not be entitled to payment, damages, monies, or compensation from [Vanderlande] of any kind for direct, indirect or impact damages arising because of hindrance, inefficiency or delay from any cause whatsoever, whether reasonable or unreasonable, foreseeable or unforeseeable, contemplated or not contemplated, or avoidable or unavoidable, except as otherwise provided herein.[61]

And ISA § 10.2, "Delays," states in part:

> Except as provided in Section 11.2, [Ludvik] shall not be entitled to payment, damages, monies, or compensation of any kind from [Vanderlande] for direct, indirect or impact damages arising because of hindrance or delay from any cause whatsoever, whether reasonable or unreasonable, foreseeable or unforeseeable. contemplated or not contemplated, or avoidable or unavoidable.

However, ISA § 10.2 is modified in PSA § 12.3 to delete the above sentence and replace it with the sentence "Ludvik agrees to the terms and conditions of the Holder/VI contract and accepts all flow down."[62] Section 12 of the PSA expressly states that its modifications to the ISA "amend the terms and conditions of the Subcontract" and that "to the extent there are any conflicts or

---

[59] *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134, 1141 (quoting *WebBank v. American Gen. Annuity Svc. Corp*., 2002 UT 88, ¶ 18, 54 P.3d 1139).
[60] *Id.*
[61] ISA § 4.3.
[62] PSA § 12.3.

ambiguities between" the PSA modifications and the ISA or any other contract document, the PSA modifications "will prevail."[63]

In its Motion, Vanderlande contends that Ludvik is not entitled to any inefficiency damages because ISA § 4.3 expressly waives such damages.[64] Ludvik admits that it did "agree to waive its delay damages" in the ISA but argues that the modification of ISA § 10.2 shows that "delay damages were expressly contemplated to allow Ludvik to bring delay claims in accordance with the terms of the HDJV/VI Subcontract."[65] Vanderlande responds that Ludvik's argument is irrelevant because Vanderlande relies on § 4.3 which was not modified or written out and that § 10.2 is not the provision at issue.[66]

As an initial matter, Vanderlande is correct that the parties discuss different provisions of the ISA in their briefing. However, that is not dispositive in and of itself. The PSA explicitly states that the modifications in § 12 control in the event of any conflicts or ambiguities with other contract documents.[67] Therefore, if the modification to ISA § 10.2 that Ludvik relies on provides for inefficiency or delay damages, it would prevail over any conflicting prohibition on such damages in ISA § 4.3. The court must determine whether the relevant provisions in the ISA and the PSA permit the sorts of inefficiency damages that Ludvik claims.

First, the language of § 4.3 is clear and unambiguous. Referencing the "inconveniences, interferences, [and] inefficiencies" inherent in an active construction site, § 4.3 directly states that Ludvik shall not be entitled to any type of damages arising from inefficiency and delay

---

[63] *Id.* § 12.
[64] MSJ Damages 13–14.
[65] Opp'n 24.
[66] Reply 12.
[67] PSA § 12.

"except as otherwise provided" in the ISA.[68] This language clearly includes the damages at issue here. Ludvik's own expert opined that its alleged damages resulted from "critical path delay" and "labor inefficiency."[69] The waiver is extremely broad. Ludvik agreed not to seek "payment, damages, monies, or compensation from [Vanderlande] *of any kind* for direct, *indirect* or impact damages *arising* because of hindrance, inefficiency or delay *from any cause whatsoever*."[70] Here, Ludvik seeks damages for Vanderlande not telling it that Vanderlande allegedly had waived the inefficiency and delay payments it wanted to pursue against HDJV. Calling these damages "misrepresentation damages," as Ludvik does in its briefing, does not change the reading of ISA § 4.3.

Second, § 12.3 of the PSA removes a similar waiver of delay damages in ISA § 10.2, but it does not remove the waiver in ISA § 4.3. Thus, the waiver in ISA § 4.3 is still effective unless the new language added to ISA § 10.2 permits Ludvik to recover delay and inefficiency damages from Vanderlande. Ludvik argues that it does because it would "allow Ludvik to bring delay claims in accordance with the terms of the HDJV/VI Subcontract, which permitted Vanderlande to bring pass-through claims for delay damages."[71]

The new language added by PSA §12.3 only states that Ludvik agrees to the terms of Vanderlande's contract with HDJV and "accepts all flow down." This is a typical subcontractor flow down clause. Flow down clauses are "designed to incorporate into the subcontract those provisions of the general contract relevant to the subcontractor's performance."[72] They

---

[68] ISA § 4.3.
[69] Aperture Report 32.
[70] ISA § 4.3 (emphasis supplied).
[71] *Id.*
[72] *U.S. ex rel. Quality Tr., Inc. v. Cajun Contractors, Inc*., 486 F. Supp. 2d 1255, 1263 (D. Kan. 2007) (quoting *United Tunneling Enterprises, Inc. v. Havens Const. Co., Inc.,* 35 F.Supp.2d 789, *794 –795 (D. Kan. 1998)).

effectively allow the parties in a subcontract to "assume the correlative position of the parties to the prime contract."[73] In other words, if Vanderlande has any rights and responsibilities with respect to HDJV that arise out of the "Holder/VI contract," the flow down clause implements those same rights and responsibilities for Ludvik with respect to Vanderlande.

Ludvik points to § 6 of Vanderlande's subcontract with HDJV (the "HDJV/VI Subcontract") as permitting Vanderlande to bring pass-through claims for delay damages.[74] Section 6 of the HDJV/VI Subcontract states that if Vanderlande's work is delayed for any reason, including by HDJV or the project Owner, Vanderlande is not entitled to any damages or additional compensation for that delay,

> except to the extent that [HDJV] is entitled to compensation for such delays, hindrances or interference from Owner, and then only to the extent of any amounts that [HDJV], on behalf of [Vanderlande], actually receives from Owner for such delays, hindrances or interference.[75]

This provision essentially prohibits Vanderlande from collecting any delay damages from HDJV except when HDJV already received those damages on Vanderlande's behalf from the project Owner. It is similar in its effect to § 11.2 of the ISA. Under both the ISA (as modified by the PSA) and the HDJV/VI Subcontract flow down, Ludvik is only entitled to delay or inefficiency damages from Vanderlande if and to the extent Vanderlande already received such damages from HDJV as part of a pass-through claim.[76]

---

[73] *Id.*
[74] Opp'n 24; *see* HDJV/VI Subcontract §6, ECF No. 110-2, filed Nov. 21, 2025.
[75] HDJV/VI Subcontract § 6.
[76] *See* ISA §§ 4.3, 11.2; *see also* HDJV/VI Subcontract § 6.

Because Ludvik's requested damages here arise from delay and inefficiency costs,[77] and because HDJV did not pay Vanderlande for Ludvik's pass-through claims,[78] the ISA expressly states that Ludvik is not entitled to the inefficiency and delay damages it has asserted against Vanderlande.[79]

### B.  Relevance to Negligent Misrepresentation Claim

Ludvik next argues that the PSA "has no bearing on Ludvik's negligent misrepresentation claim" because that claim does not request damages based on inefficiencies.[80] Instead, it alleges damages based on lost value in the Settlement Agreement because Ludvik was induced to take less money by Vanderlande's representations that the pass-through claims were still viable.[81] It is true that the negligent misrepresentation claim is distinct from a direct inefficiency claim. Even so, Ludvik's alleged damages for that claim are still tied to its ability to recover inefficiency damages from Vanderlande under the PSA and ISA.

It is important to understand where Ludvik's asserted damages arise from for its negligent misrepresentation claim. Ludvik does not contend that Vanderlande's alleged misrepresentations caused it to lose the pass-through claims against HDJV. According to Ludvik, those pass-through claims had already been waived by Change Orders 22 and 26.[82] Instead, Ludvik claims that Vanderlande's alleged misrepresentations induced it to enter into the Settlement Agreement.[83] In the Settlement Agreement, Ludvik released all its claims against

---

[77] Aperture Report 32.
[78] LE/HDJV Settlement Agreement 1.
[79] ISA §§ 4.3, 11.2.
[80] Opp'n 24.
[81] *Id.*
[82] Ludvik Decl. ¶¶ 15–18.
[83] Opp'n 24.

Vanderlande arising out of or relating to the project or the parties' Subcontract.[84] The only claims excepted from this release were certain pass-through claims.[85] Therefore, any damages for the negligent misrepresentation claim must arise out of some right or value that Ludvik had prior to entering into the Agreement and subsequently lost by signing the Settlement Agreement.[86]

Ludvik argues that it would not have signed the Settlement Agreement for the amount it did if it had known the pass-through claims were waived.[87] Instead, it asserts that it would have "file[d] an action against Vanderlande" to collect the damages it was claiming under the pass-through claims.[88] Therefore, Ludvik's theory of the damages seemingly is that (1) HDJV's projects delays caused Ludvik to incur around $9.4 million in inefficiency damages,[89] (2) Ludvik could have recovered that amount from Vanderlande in a direct action after the pass-through claims were waived against HDJV, and (3) Ludvik's direct claims in that amount against Vanderlande were waived when it signed the Settlement Agreement based on Vanderlande's alleged misrepresentations.[90]

The negligent misrepresentation claim is distinct from a direct inefficiency claim against Vanderlande. However, the amount of damages available for the alleged negligent misrepresentation is necessarily based on the amount of damages Ludvik could have obtained in a direct claim that was subsequently released in the Settlement Agreement. This makes the PSA

---

[84] VI/LE Settlement Agreement 2–3.
[85] *Id.*
[86] *See Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986) (A party injured by reasonable reliance on another party's negligent misrepresentation may recover damages *resulting from that injury*) (emphasis added).
[87] Opp'n 24.
[88] Rule 30(b)(6) Liability Deposition of Jim Ludvik ("Ludvik Liability30(b)(6) Depo") 112:1–12, ECF No. 65-4, filed Apr. 17, 2023.
[89] Aperture Report 32.
[90] Amended Compl. ¶¶ 62–63, 65; VI/LE Settlement Agreement 2–3.

relevant as a measure of the value and validity of the claims that were allegedly lost in reliance on Vanderlande's alleged negligent misrepresentation.

Ludvik claims that it could have recovered the full amount of its inefficiency and delay damages from Vanderlande directly but for the parties' Settlement Agreement.[91] But it has provided no evidence showing that it had any right to such damages even before the Settlement Agreement was signed. To the contrary, the plain language of the ISA explicitly states that Ludvik is not entitled to any direct or indirect damages or compensation from Vanderlande for "inefficiency or delay from any cause whatsoever."[92] Thus, even before Ludvik signed the Settlement Agreement in reliance on the alleged misrepresentations, Ludvik had contractually waived its right to recover inefficiency or delay damages from Vanderlande. Ludvik has only alleged the value of those prohibited inefficiency damages in its negligent misrepresentation claim,[93] so there is no evidence that it is entitled to damages for that claim.

Furthermore, even if the ISA did not prohibit inefficiency or delay damages, Ludvik has not provided any evidence to support the alleged value of its lost claims *against Vanderlande*. Ludvik's position is that it would have filed a claim against Vanderlande or received more money in the Settlement Agreement had it known the pass-through claims were waived.[94] But there is no expert testimony, evidence, or even argument on the record demonstrating what cause of action Ludvik would have asserted to recover the damages from Vanderlande or how knowledge of the waiver would have resulted in a higher settlement amount. Without any evidence to that effect, a jury would be left to speculate as to the legal claims Ludvik might have

---

[91] Amended Compl. ¶ 65.
[92] ISA § 4.3.
[93] Amended Compl. ¶ 65; Aperture Report 32.
[94] Opp'n 24.

brought and the strength and value of those hypothetical claims. Ludvik provides expert testimony as to the amount of damages it allegedly suffered from HDJV's actions that caused inefficiency and delay. But it presents no evidence to show how much, if any, of those damages it could have recovered from Vanderlande in a claim or in the settlement negotiations if Ludvik had known about the waiver.

## III.    Reasonableness of Damages

Vanderlande also argues that Ludvik cannot prove its claimed amount of damages because there was no delay and because Ludvik's expert used an unreliable process.[95] As already discussed, Ludvik cannot show any damages for its negligent misrepresentation claim related to efficiency or delay because it was contractually prohibited from asserting such damages even before the Settlement Agreement. Therefore, it is unnecessary for the court to decide whether the relevant inefficiency and delay damages were accurately and reliably calculated. Additionally, without damages, Ludvik's negligent misrepresentation claim cannot succeed as a matter of law.[96]

## ORDER

Defendant Vanderlande's [105] Motion for Partial Summary Judgment on the issue of damages is GRANTED. Judgment is GRANTED on Ludvik's negligent misrepresentation in

---

[95] MSJ Damages 14, 22.
[96] *See Blackmore/Cannon Dev. Co., LLC v. U.S. Bancorp d/b/a U.S. Bank*, No. 2:08-CV-370 CW, 2010 WL 1816275, at *9 (D. Utah May 3, 2010) ("Pleading a claim for negligent misrepresentation under Utah law requires that the plaintiff allege that the misrepresentation harmed the plaintiff.").

favor of Vanderlande. Judgment now has been granted in favor of Vanderlande on all of Ludvik's causes of action. Therefore, the action is DISMISSED with prejudice.

Signed March 9, 2026.

BY THE COURT

_____

David Barlow
United States District Judge

17